807 A.2d 264 (2002)
354 N.J. Super. 397
Mark LEVINE and Linda Levine, Plaintiffs-Appellants,
v.
THE KRAMER GROUP, CHARTER CLUB ASSOCIATES, L.P., Charter Club, Inc., the Charter Club at the Hampton, Inc., Sol Kramer, Isaac Kramer, Philip Kramer, Eli Kramer, Fred Mosesman, and Bruce Forman, Defendants-Respondents, and
Richard Sofo, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 2002.
Decided October 15, 2002.
Michael E. Donovan, Red Bank, argued the cause for plaintiffs-appellants (Donovan & Associates, P.C. attorneys; Mr. Donovan, of counsel and on the brief; William J. Cahill, on the brief).
Andrew M. Epstein, West Orange, argued the cause of defendants-respondents (Lampf, Lipkind, Prupis & Petigrow attorneys; Lois S. Feldman, on the brief).
Before Judges COBURN, COLLESTER and ALLEY.
The opinion of the court was delivered by ALLEY, J.A.D.
On May 2, 1996, plaintiffs-appellants Mark and Linda Levine filed a complaint against The Kramer Group, Sol Kramer, Isaac Kramer, Philip Kramer, Eli Kramer, Fred Mosesman, Bruce Forman, Charter Club Associates, L.P., Charter Club, Inc., and Charter Club at the Hampton, Inc. ("Kramer defendants"). The Kramer defendants are the respondents in this appeal. Plaintiffs also joined Richard Sofo as a defendant. Sofo is not a party to this appeal because plaintiffs have since settled their claims with him.
The complaint alleged six causes of action against the Kramer defendants which plaintiffs maintain arose from the Kramer defendants' omissions and intentional misrepresentations regarding their experiences with Sofo. Plaintiffs alleged that the Kramer defendants should be found liable for claims based on (1) fraudulent misrepresentation; (2) fraudulent non-disclosure; (3) negligent misrepresentation; (4) recision of the sales contract; (5) violation of N.J.S.A. 56:8-2 and other provisions of the Consumer Fraud Act; and (6) violation of N.J.S.A. 45:22A-37(a) and other provisions *265 of the Planned Real Estate Development Full Disclosure Act (PREDFDA). In addition, plaintiffs asserted two causes of action against Sofo, for harassment and intentional infliction of emotional distress.
Judge Robert W. O'Hagan heard motions for summary judgment and to dismiss the complaint and determined them on March 31, 2000, in an order that dismissed all of plaintiffs' claims against the Kramer defendants pursuant to R. 4:6-2(e), because, he ruled, plaintiffs failed to state a claim upon which relief could be granted. We affirm.

I
Our summary of the facts and the parties' factual contentions begins with the making of an agreement between plaintiffs and the Kramer defendants, specifically defendant Charter Club Associates, L.P., dated July 30, 1993, under which plaintiffs were to purchase, and the Kramer defendants' entities would construct and sell, a new home on property at 42 Amagansett Drive, Morganville, New Jersey.
The complaint against the Kramer defendants centers on contentions that they are liable to plaintiffs for the conduct of Sofo, who owned a home on property that adjoined the new home being built for plaintiffs. It is undisputed for purposes of this appeal that at some point after the parties' entry into the agreement in July 1993, Sofo embarked on a course of conduct that, at least in some of its manifestations, was alarming and harassing, as well as repellent. Plaintiffs do not contend, however, as they made clear at oral argument before us, that the Kramer defendants had any knowledge or notice prior to the making of that agreement that Sofo had engaged in or would engage in such conduct. Sofo had purchased his home on the adjoining property in 1987, and he lived at that location with his family until April 1998.
On or about October 15, 1993, construction began on plaintiffs' home with the pouring of footings and the foundation. Sofo thereafter communicated with the Kramer defendants, various Marlboro Township officials, and the Marlboro Township Mayor regarding the construction of plaintiffs' home. For example, on October 20, 1993, Sofo sent a letter to Linda Sansone at the Office of the Mayor, which purportedly confirmed the details of a phone conversation Sofo had had with Ms. Sansone in which he had expressed his dismay over the construction taking place adjacent to his property. On October 25, 1993, Sofo sent a letter directed to the Office of the Mayor stating his concern about a "loophole" in the zoning code and his continued objections regarding the construction taking place on the site of plaintiffs' future home. Sofo stated that he was unhappy with the height of the finished foundation on the adjacent property. Sofo provided background information to the mayor on his situation to help "bolster ... sympathy" for his "plight."
Sofo then sent a letter dated October 29, 1993, to Mayor Matthew Scannapieco of Marlboro Township. He wrote in pertinent part the following:
You should know that since this nightmare began, on October 15, I have been so distraught that I have yet to get a proper night's sleep. Try as I might, I simply cannot put aside the haunting acknowledgment that I can do nothing, seemingly to stop its progression. I am all consumed with vengeful thoughts, coupled with thoughts of moving; including the notion of selling my home at a loss, to the largest group of the most loathsome bunch of excuses for human beings that I can feasibly round up.

*266 Thus far, all of my worst fears predicted and projected in my earlier communications have been confirmed. In fact, the sight of the completed foundation is even more abhorrent than I had imagined. Every time I step outside my home, only to be hit in the face with that monolithic abomination, I think of starting up one of those bulldozers idly laying around here, and demolishing the thing myself.
* * *

I want you to afford me the consideration of your personal response. I respectfully request that you accept my invitation to call upon me at my home, because I want you to personally see, with your own eyes, the source of my grief. It is an opportunity to demonstrate how much you genuinely care. If nothing else, the consideration of a word or two from you, may help quell the fire that now burns within me.
Construction of plaintiffs' new home was stopped during late October/early-November, for reasons that are disputed. In any event, on or about November 2, 1993, Fred Mosesman, one of the Kramer defendants, met with Sofo regarding Sofo's concerns about the construction of plaintiffs' home. Mosesman offered to make some cosmetic and architectural changes to plaintiffs' home, and Sofo responded in a letter dated November 3, 1993, which stated:
I want you to know that I appreciate your calling upon me yesterday, in response to my objections to the newly constructed foundation next to my home. Nevertheless, I remain deeply disappointed by the fact that your organization did not see fit to demonstrate even the slightest inkling of willingness to come forward in addressing my concerns until such time as I had summoned the personal support of Mr. Scannapieco. What you people have demonstrated (and this goes for the prospective homeowner also), is a blatant lack of consideration and respect for me. And it is indeed unfortunate that I should have to have found it necessary to involve the township administration in such a matter as this, a situation that should have never have been allowed to occur in the first place; in order to gain your attention.
As I have indicated, despite your offering at this time of some well-founded, constructive possibilities, that may help somewhat in making the "abominable monolith" more aesthetically pleasing, there remain greater concerns that cannot be so simply covered up with cosmetic compromises.
Plaintiffs assert that the Kramer defendants never advised them of defendant Sofo's November 3, 1993 letter, despite the fact that defendant Sofo made reference to the "prospective homeowner."
The Kramer defendants agreed, before completion of plaintiffs' house, to make certain architectural and cosmetic changes in the construction of plaintiffs' home. They agreed, for instance, to provide additional brickwork "to minimize the exposure of building block" along the side of plaintiffs' home adjacent to Sofo's, to plant pine trees on the border of the property between Sofo's home and that of the plaintiffs, and to replace Sofo's driveway.
Plaintiffs maintain that before their closing they were never informed by the Kramer defendants of their agreement with Sofo. Construction of plaintiffs' new home was completed by June 1994. The closing documents for plaintiffs' home were signed on June 3, 1994. On or about that date, plaintiffs moved into their new home. On the day plaintiffs started to move into their new home, Sofo delivered two envelopes to plaintiffs. Sofo had printed on one envelope "Read 1st" and *267 enclosed copies of the three letters that he had sent to Kramer defendant Mosesman and the Marlboro Township officials. Sofo had printed on the other envelope "Read last!" That envelope contained a five-page letter dated June 2, 1994, directed to "Neighbor." Within the first paragraph of the June 2, 1994 letter to plaintiffs, Sofo expressed his hatred for plaintiffs, even though plaintiffs had never met Sofo. The letter from Sofo, in addition to calling plaintiffs "loathsome creatures" and "lowly scum," also stated:
You people have fired an eternal flame of contempt that has burned within me throughout all of these months. Now that you have arrived, I want you to understand right out of the starting-gate, in plain English, that I hate you, and your whole family.

Sofo proceeded in the letter, in language devoid of any pretense of civility, to express his anger toward plaintiffs about an incident that took place a week before he wrote the letter of June 2. Sofo blamed plaintiffs for the problems surrounding the opening of his pool. At the time of this alleged incident, however, plaintiffs had not yet met Sofo, nor had they closed on or moved into their new home. Sofo further stated:
Who the [F* * *] do you think you are you [f* * *ing] piece of shit bitch? Who the [f* * *] do you think you're playing with? I am laying down the [f* * *ing] LAW to you right here and now, you [f* * *ing] fat-assed big-mouth, that if I feel like draining my [f* * *ing] pool, I will drain my [f* * *ing] pool, where and when I so choose, and you are to understand that you have not one stinking, [f* * *ing] syllable to say about it.[1]
Plaintiffs assert that these letters provided them for the first time with details about what had taken place during the construction of their house that the Kramer defendants failed to tell them about, and that the letters brought to light the potential inconsistencies in the Kramer defendants' explanations of what had caused the delay in the construction of their home.
In the closing of the June 2, 1994 letter, Sofo stated:
You have provoked me beyond anger now. I am to the point where I am going to laugh in that execrable face of yours, as I proceed from here on in to make you regret that you ever laid your vacant, pathetic eyes on that parcel of land next door to me[.] For as much as your entire being is mesmerized by your current infatuation with that house, and for all your abhorrent self-aggrandizement, you have bought yourself a neighbor, the likes of which you have never seen, and one who is passionately committed to seeing to it that the rest of you life here is made miserable; that is of course when the mood should so happen to strike. Welcome to the neighborhood, and [F* * *] YOU to you all!
This letter prompted plaintiffs to file a harassment complaint in the Marlboro Township Municipal Court against defendant Sofo.
Sofo's troubling behavior continued toward plaintiffs in the form of two disturbing letters dated January 6, 1996, and January 12, 1996. As a result of these letters, plaintiffs filed a four-count complaint for harassment against Sofo on January 19, 1996, in the Marlboro Township Municipal Court. Sofo then filed a number of noise complaints against plaintiffs.
The torrent of abuse and harassment spewing from Sofo continued, and plaintiffs remained subject to it until after a trial on the harassment charges against *268 Sofo and noise complaints against plaintiffs. The trial was held on November 25, 1998. Sofo was found guilty on the four counts of harassment under N.J.S.A. 2C:33-4, and the ten noise complaints against plaintiffs were dismissed as baseless. Sofo was placed on probation and ordered to have no further contact with plaintiffs.

II
Plaintiffs' claims are tied to the agreement that they had with the Kramer defendants, but those claims plainly sound in tort rather than contract. Under the agreement, for example, plaintiffs were obligated to purchase and to pay for the house and property, and the Kramer defendants were obligated to construct the home and to convey it and the property on which it was situated. There is no contention that the parties failed to comply with the terms of that agreement.
Thus, the alleged causes of action which plaintiffs would have us recognize would arise, not out of the agreement, but at most as an incident of the existence of the agreement. Plaintiffs specifically eschewed during oral argument any effort to contend that an ordinary homeowner who sells his or her house would be liable on the theories they urge us to recognize as against defendants. Instead, they claim that their alleged causes of action should apply only to commercial developers and sellers of real estate.
Regardless of that limitation, we find no basis for such claims, either in the common law or in the statutory law that plaintiffs cite, namely the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to 106, and PREDFDA, N.J.S.A. 45:22A-21 to 56.
We are aware that under cases such as McDonald v. Mianecki, 79 N.J. 275, 299, 398 A.2d 1283 (1979), certain duties of a builder/developer to a home buyer to exercise reasonable care have been imposed. McDonald, however, involved duties in relation to the construction and habitability of a residence and is not authority for imposing liability upon a builder/developer for factors outside his control, namely neighborhood personalities.
We also see no basis for plaintiffs' claims in cases such as J.S. v. R.T.H., 155 N.J. 330, 337-39, 714 A.2d 924 (1998). In J.S., the Court considered the duty issue in a particular setting, that is whether a wife who suspects or should suspect her husband of sexual abuse of their neighbors' children had any duty of care to prevent such abuse. The court concluded that the spouse had such a duty to take reasonable steps to prevent or warn of the harm. Id. at 352, 714 A.2d 924. This is not such a case, and as grievous as must have been plaintiffs' plight under Sofo's abuse, the Kramer defendants were not on notice of the potentially harmful behavior to which plaintiffs would be subjected in the same sense as was the wife in J.S. Other authorities relied on by plaintiff also fail to persuade us that a viable cause of action exists against the Kramer defendants.
One of these cases is Strawn v. Canuso, 140 N.J. 43, 657 A.2d 420 (1995). Plaintiffs contend that the Supreme Court held in Strawn that a builder/developer of real estate had a duty not make any material misrepresentations, and a duty to disclose to a buyer the existence of circumstances and conditions which are unknown to the buyer, which are known or should be known to the seller, and which, based upon a reasonable foreseeability, might "materially affect the value or desirability of the property." Id. at 60, 657 A.2d 420. On the other hand, the Kramer defendants maintain that the holding in Strawn limited the duty of a builder/developer to the disclosure of known off-site conditions of *269 the land, and that Strawn specifically held that sellers and brokers of real estate have no duty to investigate and disclose the transient social conditions in the community that arguably affect the value of the property. Id. at 64, 657 A.2d 420. On the issue of the duty to be imposed, the Court expressly stated that:
We do not hold that sellers and brokers have a duty to investigate or disclose transient social conditions in the community that arguably affect the value of property. In the absence of a purchaser communicating specific needs, builders and brokers should not be held to decide whether the changing nature of a neighborhood, the presence of a group home, or the existence of a school in decline are facts material to the transaction. Rather, we root in the land the duty to disclose off-site conditions that are material to the transaction.
Ibid.
In our view, it is clear under Strawn that in this context the Kramer defendants' duty as a builder/developer was limited to the disclosure of known off-site conditions of the land, which Sofo was not. He merely lived on a neighboring lot and manifested concerns about how the new home being built was affecting his property. Sofo falls under the category of a social condition which the Kramer defendants were under no duty to disclose.
We also conclude that Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 694 A.2d 1017 (1997), provides no authority for a sustainable claim. In Clohesy, the plaintiff died after being kidnapped from the parking lot of a supermarket, and the issue was whether the owner of the supermarket had a duty to provide security or warnings in its parking lot to protect its customers. Id. at 499-500, 694 A.2d 1017. The Court held that the supermarket had a duty because a number of criminal incidents on its premises had occurred in the previous two and a half years. Id. at 503, 694 A.2d 1017. In light of that record, the Court concluded that it was foreseeable that a customer would be at danger in an unsecured parking lot. In contrast, in this case, there is no evidence that prior to the contract with plaintiffs, the Kramer defendants were aware of any harm that could befall plaintiffs. In short, unlike the situation in Clohesy, the Kramer defendants had no knowledge of any potential danger.
Plaintiffs further contend that New Jersey statutory law supports a conclusion that they were owed a duty by the Kramer defendants under both the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to 56:8-106, and PREDFDA, N.J.S.A. 45:22A-37, not to make any material misrepresentations and to disclose to a prospective buyer items that might materially affect the value or desirability of the property, which are unknown to the buyer but are known or should be known to the seller.
The Consumer Fraud Act does not apply because there is no ascertainable loss arising from the subject transaction, especially inasmuch as it appears that the value of plaintiffs' property has increased. With respect to plaintiffs' assertion that through PREDFDA the Kramer defendants had a duty to inform plaintiffs about defendant Sofo, we note that PREDFDA provides in pertinent part:
Any developer disposing of real property subject to this act, who shall violate any of the provisions of section 6 hereof, or who in disposing of such property makes an untrue statement of material fact or omits a material fact from any application for registration, or amendment thereto, or from any public offering statement, or who makes a misleading statement with regard to such disposition, shall be liable to the *270 purchaser for double damages suffered, and court costs expended, including reasonable attorney's fees, unless in the case of an untruth, omission, or misleading statement such developer sustains the burden of proving that the purchaser knew of the untruth, omission or misleading statement, or that he did not rely on such information, or that the developer did not know and in the exercise of reasonable care could not have known of the untruth, omission, or misleading statement.

[N.J.S.A. 45:22A-37(a)]
The Kramer defendants did not engage in any fraudulent or unlawful practice against plaintiffs, within the purview of PREDFDA, by not informing plaintiffs of their encounters with defendant Sofo, even assuming that this statute applies. They did not misrepresent any material facts to the transaction before the making of the contract. Moreover, as we have noted, plaintiffs acknowledge that they make no claim that the Kramer defendants were aware of potential problems with Sofo until the contract was already signed.
Accordingly, plaintiffs' contention that the Kramer defendants owed a clear legal duty to them has no basis in New Jersey common law, or in the statutes on which they rely. Judge O'Hagan correctly applied relevant law in concluding that the Kramer defendants were entitled to summary judgment. We do not in the least wish to minimize plaintiffs' distasteful and distressing ordeal flowing from Sofo's conduct. But in the final analysis, as a matter of law, even accepting as true all evidence that supports plaintiffs' position, and according plaintiffs the benefit of all legitimate inferences which can be deduced, the claims against the Kramer defendants must fail because they owed and breached no duty to plaintiffs with respect to Sofo and his conduct.
Affirmed.
NOTES
[1] We have attempted to expurgate some of Sofo's language.