NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2111-18T3

ANGEL ALBERTO PAREJA,

      Plaintiff-Appellant,

v.

PRINCETON INTERNATIONAL
PROPERTIES and LOWE'S
LANDSCAPING AND LAWN
MAINTENANCE, LLC,

      Defendants-Respondents,

and

PRINCETON INTERNATIONAL
PROPERTIES,

      Defendant/Third-Party
      Plaintiff,

v.

LOWE'S LANDSCAPING AND
LAWN MAINTENANCE, LLC,

      Third-Party Defendants.
_____

| APPROVED FOR PUBLICATION |
| :---: |
| April 9, 2020 |
| APPELLATE DIVISION |

Submitted December 2, 2019 – Decided April 9, 2020

Before Judges Fasciale, Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2283-16.

Garces, Grabler & LeBrocq, PC, attorneys for appellant (David E. Rehe, on the brief).

William Pfister, Jr., attorney for respondent Princeton International Properties.

The opinion of the court was delivered by

FASCIALE, P.J.A.D.

In this slip and fall case, we must address whether the ongoing-storm rule applies in New Jersey. The ongoing-storm rule arbitrarily relieves commercial landowners from any obligation to try to render their property safe while sleet or snow is falling. The rule is premised on the ground that to do so would always be "inexpedient and impractical." Such a bright-line rule, however, ignores situations when it is reasonable for a commercial landowner to remove or reduce foreseeable and known snow or ice hazards. Thus, adherence to the rule frustrates a main function of tort law—deterring tortious behavior and preventing accidents.[1]

---

[1] In his recent dissent from the Court's order denying a plaintiff's petition for certification, Justice Barry Albin explained that in at least three unpublished opinions, our court "mistakenly suggested [the Court] has spoken to this issue through [the Court's] precedents." See Dixon v. HC Equities Assocs., LP, ___ N.J. ___, ___ (Feb. 13, 2020) (slip op. at 2) (Albin, J., dissenting). Justice Albin stated that our court misapplied the Supreme Court's jurisprudence by "misconstru[ing] [Qian v. Toll Bros. Inc., 223 N.J. 124 (2015), Mirza v.

We hold that a commercial landowner has a duty to take reasonable steps to render a public walkway abutting its property—covered by snow or ice—reasonably safe. Such a duty—to remove or reduce a foreseeable hazard—cannot be fulfilled by always waiting to act until after a storm ends, regardless of the risk imposed to invitees and pedestrians. The commercial landowner's liability may arise only if, after actual or constructive notice, it fails to act in a reasonably prudent manner under the circumstances to remove or reduce the foreseeable hazard. Whether it would be inexpedient or impractical to act is one of many factors for the jury's consideration. Thus, reasonableness is the polestar.

On appeal from the grant of summary judgment, plaintiff argues the judge erred by: (1) Applying the ongoing-storm rule and determining that defendant Princeton International Properties, the commercial landowner, had no duty to remove or reduce the ice hazard until after the precipitation ended; and (2) usurping the jury by finding that no de-icing or removal efforts would have been successful until after the storm ended. We reverse.

I.

---

Filmore Corp., 92 N.J. 390 (1983), and Bodine v. Goerke Co., 102 N.J.L. 642 (E. & A. 1926)] [to] hold[] that a commercial landowner owes no duty to tenants or the public to make a reasonable effort to remove snow or ice from a sidewalk until sleet or snow ceases." Ibid.

When reviewing an order granting summary judgment, we apply the same standard the motion judge considered. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c). First, we determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540. Once we resolve that question, we decide de novo the legal question of whether the moving party is entitled to judgment as a matter of law. Ibid.

The record does not reflect the anticipated number of people using defendant's property on the morning of the accident. We do know, however, that defendant's property consisted of two offices on the first floor, two apartments on the second and third floors, and a paved parking lot with a concrete driveway apron. The accident occurred at 7:50 a.m. on Monday, January 12, 2015, so presumably the businesses were open, the residents who lived on the second and third floors could come and go, and pedestrians were using the public sidewalks.

Defendant employed maintenance people and retained Lowe's Landscaping (Lowe's) to perform snow and ice removal at the property.[2] However, it appears that no snow or ice pre-treatment or removal occurred on the date in question. Weather conditions caused black ice to form on the sloped apron, which caused plaintiff to slip as he walked to work. He was seriously injured.

Defendant's forensic meteorologist, Matthew Potter, M.S., examined the pertinent temperature trends, precipitation, and the residual snow and ice present on the ground for the six days leading up to the accident. He stated that three storms had occurred over those six days, such that at the time of the accident there remained a trace to less-than-one inch of snow on undisturbed ground surfaces, as well as piles of snow at street corners; the temperature during that timeframe was colder than normal—characterized as sub-freezing; and some ground surfaces remained at or below thirty-two degrees through the time of the incident.

Potter's report is consistent with that of plaintiff's forensic meteorology expert, Alicia C. Wasula, Ph.D, CCM, as well as plaintiff's recollection that it had snowed days before the accident, but on the morning of his accident,

_____

[2] The motion judge granted Lowe's unopposed motion for summary judgment, which is not under review on this appeal.

"most of the ground [had] no snow" except for "big bunches of snow" at street corners.

Twenty-eight hours before plaintiff's accident, at 3:55 a.m. on January 11, 2015, the National Weather Service issued an advisory predicting a mix of snow and sleet accumulations of around one inch, as well as trace amounts of ice, expected between 1:00 a.m. and 10:00 a.m. on January 12. The advisory warned that untreated surfaces might become slippery due to the precipitation.

Wasula reported that, consistent with the weather advisory, very light sleet fell between 1:31 a.m. and 1:40 a.m., with Potter reporting pockets of "freezing rain and sleet." According to Wasula, there was then "[a] mix of sleet, rain and freezing rain" between 7:22 a.m. and 9:00 a.m. Potter concluded it was reasonably certain, as a result of the precipitation and "sub-freezing temperature[] in the prior six days," that "a glaze of ice . . . develop[ed] on these colder ground surfaces."

Defendant conceded that it ordinarily prepared for upcoming storms. Defendant's Vice President (the VP) gave deposition testimony about such steps. The record reflects that the VP regularly watched the Weather Channel, and informed Lowe's about expected storms so that "they" would be prepared. At this point in the litigation, we therefore reasonably infer that defendant

knew about the advisory's warning that untreated surfaces might become slippery.

Defendant's maintenance supervisor (the supervisor) asserted that Lowe's was responsible for salting the property. He did not know whether Lowe's had been out on the day of the accident. However, that morning, the supervisor was in the general area of the accident and confirmed that the driving conditions were slippery.

At 7:50 a.m. on January 12, plaintiff parked across the street from defendant's property, walked towards the property wearing slip-resistant shoes, and without detecting ice on the roadway, stepped onto the driveway apron and then slipped and fell on black ice. The meteorological documentation in the record indicates that the temperature was thirty-two degrees, the sky was overcast, and the wind was blowing between five and ten miles per hour from the southwest. Plaintiff testified that it was not snowing when he fell, but it was drizzling sleet.

Plaintiff retained Wayne F. Nolte, Ph.D., P.E., a professional engineer, who opined that pre-treating the slippery conditions with anti-icing and de-icing materials would have reduced the hazard. Nolte relied on the advisory; the American Society for Testing and Materials (ASTM) "Standard Guide for [S]now and Ice Control for Walkway Surfaces," which describes techniques

for snow and ice control, including preparatory, pre-storm application of anti-icing, de-icing, and abrasive materials, and monitoring and treating walkway surfaces for refreezing; and the American National Standards Institute "Provision of Slip Resistance on Walking/Working Surfaces," which provides that "[e]ffective snow management is anticipatory." He also concluded that nothing in the local ordinance[3] regarding snow and ice removal precluded a commercial owner from exercising reasonable care to pre-treat dangerous conditions as they develop.

II.

We now address our rejection of the ongoing-storm rule. We will analyze: (i) The soundness of defendant's argument that our Supreme Court's precedent imposed the rule; (ii) authority from other jurisdictions; (iii) our rationale for imposing a duty of reasonable care on defendant; and (iv) the details of that duty.

(i) Defendant's Erroneous Belief that the New Jersey Supreme Court Adopted<br>the Ongoing-Storm Rule

Our Court has not squarely addressed the ongoing-storm rule, let alone explicitly held that it would categorically be "inexpedient and impractical" for a commercial landowner to make reasonable efforts to remove or reduce

---

[3] We will address the ordinance later in this opinion.

8

known foreseeable snow or ice hazards on public sidewalks abutting its property while precipitation is falling.

Relying on Bodine, defendant erroneously asserts that it is "clear and well settled" that the duty of a commercial landowner to "keep a sidewalk reasonably free and clear of snow and ice does not commence until after a reasonable time passes following precipitation." In Bodine, the plaintiff alleged that the commercial landowner allowed "snow to remain on the store entrance . . . for an unreasonable length of time [after] having notice thereof [and] that [doing so] would be slippery and dangerous[.]" 102 N.J.L at 643. The Court of Errors and Appeals identified the only question on appeal: "[W]hether negligence may be reasonably inferred from the testimony." Id. at 642. It concluded the judge erred by not entering a directed verdict of no cause of action in the commercial landowner's favor. Id. at 644. The Court of Errors and Appeals—in its two-page opinion written ninety-four years ago— did not definitively hold that a commercial landowner has no duty to clear a business entrance of snow and ice until precipitation has ceased, and no reasonable reading of Bodine suggests such an expansive declaration of law.

Fifty-five years after Bodine, our Supreme Court addressed a commercial landowner's obligation to maintain sidewalks. In Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 157 (1981), the Court held that "commercial

landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." Pertinent to this appeal, in <u>Mirza</u>, the Court held "maintenance" of a public sidewalk includes snow and ice removal. 92 N.J. at 400.

Defendant mistakenly cites <u>Mirza</u> to support its contention that a commercial landowner's duty to keep a sidewalk reasonably free and clear of snow and ice does not commence until "cessation of precipitation." Defendant argues <u>Mirza</u> plainly invoked the ongoing-storm rule. But that is not what the Court stated in <u>Mirza</u>. Rather, the Court held

> that maintenance of a public sidewalk in a reasonably good condition may require removal of snow or ice or reduction of the risk, <u>depending upon the circumstances</u>. The test is whether a reasonably prudent person, who knows or should have known of the condition, would have within a reasonable period of time thereafter caused the public sidewalk to be in reasonably safe condition.
>
> [<u>Id.</u> at 395-96 (emphasis added).]

<u>Mirza</u> does not mention the ongoing-storm rule. Instead, the Court concluded the duty to reasonably remove or reduce the hazard is triggered once "a reasonably prudent person . . . knows or should have known" about the dangerous condition. <u>Id.</u> at 395. Notably, the Supreme Court also recognized that "[t]o act non-negligently is to take reasonable precautions to <u>prevent</u> the

10                                                    A-2111-18T3

occurrence of foreseeable harm to others." Fernandes v. DAR Dev. Corp., 222 N.J. 390, 404 (2015) (emphasis added) (quoting Weinberg v. Dinger, 106 N.J. 469, 484 (1987)). Here, defendant arguably had constructive notice of the "dangerous condition" at least twenty-eight hours before the accident, which was plenty of time to take reasonable precautions—as Nolte opined—to "prevent the occurrence of foreseeable harm to others." Ibid.

Finally, Qian, does not support defendant's position. Like Mirza, Qian did not mention the ongoing-storm rule nor did the Court hold that the duty is triggered only after snow and ice stop falling. See Qian, 223 N.J. at 124. Qian simply required a homeowners' association and its management company to clear snow and ice from the community's private sidewalks. Id. at 142. Qian is distinguishable.

Even though there is no Supreme Court case directly on point, our own precedent has recognized a landowner's duty to remove ice and snow during an ongoing storm. In Moore v. Schering Plough, Inc., 328 N.J. Super. 300, 303 (App. Div. 2000), the plaintiff was a security guard for the defendant's property. He slipped and fell while walking on a sidewalk. Ibid. At the time of his accident, snow had been falling for about seven hours, and the storm was ongoing. Ibid. The sidewalk did not appear to have been cleared, notwithstanding the defendant's knowledge of the hazardous condition. Id. at

307. We reversed summary judgment to the defendant, holding that the landowner owed a duty to use reasonable care for the security guard's safety. Ibid. Whether the landowner acted reasonably presented a jury question. Id. at 302. We stated that the jury should consider

> the extent and timing of the snowfall, the time of day or night, the nature of the efforts actually taken by the owner to maintain the premises, the practicality of cleaning up in stages or by priorities, the plaintiff's care for his own safety including his foot wear, the minimal usage consequent on the "closed" facility in contrast to a normal work week, and any other pertinent factors.
>
> [Id. at 307.]

We acknowledge Moore is distinguishable from this case because the plaintiff fell on a sidewalk located entirely on private property. By contrast, this case involves a pedestrian's fall on a public sidewalk (concrete apron) abutting private property. Moore is relevant, however, to the extent that it recognized a landowner's duty to remove or reduce ice and snow hazards during an ongoing storm.

### (ii) Out-of-State Jurisprudence

Other jurisdictions have explicitly addressed the ongoing-storm rule. Of course, we are not bound by those decisions, but they provide additional support for our holding. The opinions rejecting a categorical application of the ongoing-storm rule are most persuasive, as we will demonstrate. As for the

12 A-2111-18T3

jurisdictions embracing the ongoing-storm rule, we extrapolate general themes important for the imposition of a landowner's duty of ordinary and reasonable care while precipitation is falling and also for the jury's consideration of whether a commercial landowner breached that duty.

(a) Jurisdictions Rejecting the Ongoing-Storm Rule

In Budzko v. One City Center Associates Ltd. Partnership, 767 A.2d 310, 314-15 (Me. 2001), the Supreme Judicial Court of Maine rejected an argument that a commercial landowner never owes a legal duty to remove freezing precipitation as it falls. The Court acknowledged its slip and fall negligence jurisprudence that imposed a "positive duty [on business owners to] exerc[ise] reasonable care in providing reasonably safe premises . . . when it knows or should have known of a risk to customers on its premises." Id. at 314 (third alteration in original) (quoting Currier v. Toys 'R' Us, Inc., 680 A.2d 453, 455-56 (Me. 1996)). The Budzko Court held, such a duty cannot be fulfilled by "wait[ing] until after [a] storm to take any action, regardless of the risk [im]posed to its invitees during the storm." Id. at 315. It held that "[b]usiness owners have a duty to reasonably respond to foreseeable dangers and keep premises reasonably safe when invitees may be anticipated to enter or leave the premises during a winter storm." Ibid. (emphasis added); see also Gray v. United States, 845 F. Supp. 2d 333, 339 (D. Me. 2012) (following

Budzko and acknowledging—even with Maine's snowy and icy winters—that "a landowner cannot wait until a storm ends to take safety precautions").

The Supreme Court of Kentucky applied the same rationale when it refused to follow the ongoing-storm rule, and instead remained faithful to the gravamen of a tort claim. In Carter v. Bullitt Host, LLC, 471 S.W.3d 288, 299 (Ky. 2015), the Court refused to recognize "a separate category or special status" for liability associated with falling snow and ice. The plaintiff fell on ice near a hotel's entrance. Id. at 290. In reversing summary judgment to the hotel, the Court acknowledged that the storm's ongoing nature is relevant to "what reasonable conduct the hotel should have done in the exercise of ordinary care," id. at 299, and then stated:

> [I]t has always been the law that a landowner's duty of reasonable care includes keeping the premises in a reasonably safe condition. If a person owns or occupies land, there are attendant responsibilities that come with that possession, which the possessor is in the best position to address. This is especially the case where the landowner operates a business and entices customers to the land where they encounter a dangerous hazard.
>
> . . . .
>
> It is true that no one controls the weather; but neither is anyone reasonably expected to do so. A landowner is held only to reasonable conduct. The gravamen of a tort claim has always been that harm has come to a plaintiff because of the unreasonable conduct of the tortfeasor. Such conduct need only be the conduct

14

that the ordinary person would not do under the same circumstances, in order to be tortious.

[Id. at 299-300 (emphasis added).]

We completely agree. And that is precisely why we have emphasized that reasonableness is the polestar.

The Court of Appeals of Indiana also rejected the ongoing-storm rule. In Henderson v. Reid Hospital & Healthcare Services, 17 N.E.3d 311, 319 (Ind. Ct. App. 2014), the court stated:

> [A] landowner has a duty to exercise reasonable care under the circumstances to maintain its business premises, including ensuring that the sidewalks and parking lots are in a reasonably safe condition. This duty includes clearing areas such as sidewalks and parking lots of the natural accumulations of snow and ice. Although we conclude that there is no requirement that the storm or weather condition causing the accumulation of snow or ice cease before this duty attaches, we do recognize that the . . . landowner is entitled to actual or constructive notice of the presence of snow or ice and a reasonable opportunity to remove it.

Notice of a dangerous condition is an important component in our holding too. When addressing the ongoing-storm rule, the court emphasized, "particularly the language requiring the storm or weather condition to cease before there is a duty to remove the accumulated snow or ice, has not been adopted in Indiana jurisprudence[.]" Id. at 317.

15

The Court of Appeals of Michigan also rejected the ongoing-storm rule. In Lundy v. Groty, 367 N.W.2d 448, 450 (Mich. Ct. App. 1985), the court reversed summary judgment for the landowner and addressed the duty to "shovel, salt, sand or otherwise remove the snow from the driveway." In Lundy, the plaintiff worked for the landowner as a housekeeper and babysitter. Id. at 449. She arrived at work, parked her car in the driveway, and—while snow was falling—slipped on the driveway, which had not been shoveled or salted. Ibid. The trial judge misinterpreted Michigan law to relieve the landowner from taking any "reasonable measures" until after "all of the snow had fallen." Ibid. The court of appeals corrected that misinterpretation:

> [The] [d]efendant would owe [the] plaintiff a duty because she should know that snow was falling on her property and that it would create a dangerous condition for the elderly plaintiff. The general standard of care would require [the] defendant to shovel, salt, sand or otherwise remove the snow from the driveway.
>
> . . . .
>
> The specific standard of care in the instant case would be the reasonableness of [the] defendant's actions regarding the snow. Whether it was reasonable to wait for the snow to stop falling before [the defendant] shoveled or whether salt or sand should have been spread in the interim is a question for the jury.
>
> [Id. at 450 (emphasis added).]

See also Clink v. Steiner, 413 N.W.2d 45, 47-48 (Mich. Ct. App. 1987) (stating that while the law imposes a duty on invitors to use reasonable measures to diminish the hazard of snow and ice, the specific reasonable actions that a defendant should have taken is a question for the jury).

The United States Court of Appeals for the District of Columbia addressed the ongoing-storm rule. In Pessagno v. Euclid Inv. Co., 112 F.2d 577, 578 (D.C. Cir. 1940), the plaintiff—a guest of the apartment building's tenant—slipped on ice located on the premises while it was raining and freezing. The court addressed whether the landlord was "obligated to use reasonable care, during the progress of a storm, to remove or render harmless ice forming thereon from natural causes[.]" Ibid. The court concluded there was such a duty. Id. at 579. It stated that to hold otherwise would overlook a landlord's duty "to exercise ordinary care . . . [in areas] under his exclusive control . . . [and] after notice, to exercise ordinary care to keep them free from conditions, whether permanent or temporary, which make them dangerous to the tenants or their guests." Ibid. Importantly, the Court of Appeals stated:

> In adopting this rule, we are not, as counsel say, imposing on the owner of the premises a burden physically impossible to discharge or one which makes the owner the guarantor of the safety of his tenants and their guests. We do not hold there was an absolute duty to provide a safe entrance or to keep it safe by extraordinary or unusual means. If the storm made the spreading of sand or ashes or some other

17

> preventive impossible or even useless, no reasonable person would expect it to be done, or if the spreading of sand every two or three hours might be expected to accomplish reasonable safety, what appellee did in that regard was sufficient.
>
> [Ibid.]

No liability attaches without actual or constructive notice of a hazardous condition. See Youssef v. 3636 Corp., 777 A.2d 787, 793 (D.C. 2001) (stating that "weather predictions alone are not sufficient to establish constructive notice of an allegedly dangerous condition").

In Nebraska, the Supreme Court reversed a judgment entered after the jury returned a verdict of no cause of action in the landlord's favor. In Danner v. Myott Park, Ltd., 306 N.W.2d 580, 583 (Neb. 1981), the Court concluded the trial judge gave this erroneous charge to the jury: "You are instructed that a landlord may . . . await the end of a snow storm and a reasonable time thereafter before removing ice and/or snow from outside entrances, walks, platforms or steps." The Court said the jury determines "under the evidence whether [the] defendant was afforded a reasonable time to make the condition safe or give adequate warning." Ibid. In remarking that the jury charge was erroneous, the Court insightfully commented that one does not have to "reflect long to think of situations where giving the challenged instruction results in

injustice." Ibid. It pointed to the following State of Washington appeals opinion to illustrate the problem.

The Court of Appeals of the State of Washington rejected the ongoing-storm rule. In Cramer v. Van Parys, 500 P.2d 1255, 1262 (Wash. Ct. App. 1972), the court upheld the judge's refusal to give a charge similar to the one in Danner, and addressed important factors for the jury's consideration when determining the reasonableness of a landlord's efforts to remove or reduce known foreseeable ice hazards while precipitation is falling.

> In weighing the relevant circumstances, a jury might consider the nature and size of the apartment, the age and number of tenants expected to use the slippery area, the size of the area in need of cleaning, the current and anticipated weather conditions and the practicality of other safety measures or methods of ingress and egress. . . . To permit any landlord under any circumstance to always wait until the end of a storm before removing snow would create a rigidity in the law inconsistent with the innumerable variables that are possible.
>
> [Ibid.]

Later in this opinion, we enumerate the factors that should be considered when evaluating reasonableness.

(b) Jurisdictions Recognizing the Ongoing-Storm Rule

We are fully aware of those jurisdictions embracing the ongoing-storm rule. See Kraus v. Newton, 558 A.2d 240, 243 (Conn. 1989); Laine v.

Speedway, LLC, 177 A.3d 1227, 1228-34 (Del. 2018); Reuter v. Iowa Tr. & Sav. Bank, 57 N.W.2d 225, 227 (Iowa 1953);[4] Agnew v. Dillons, Inc., 822 P.2d 1049, 1054 (Kan. Ct. App. 1991); Mattson v. St. Luke's Hosp. of St. Paul, 89 N.W.2d 743, 745-47 (Minn. 1958); Solazzo v. N.Y. City Transit Auth., 843 N.E.2d 748, 749 (N.Y. 2005); Goodman v. Corn Exch. Nat'l Bank & Tr. Co., 200 A. 642, 643-44 (Pa. 1938); Berardis v. Louangxay, 969 A.2d 1288, 1291-93 (R.I. 2009); Clifford v. Crye-Leike Commercial, Inc., 213 S.W.3d 849, 853 (Tenn. Ct. App. 2006); Walker v. Mem'l Hosp., 45 S.E.2d 898, 902, 907 (Va. 1948). See also Hall v. Safeway Stores, Inc., 360 S.W.2d 536, 537-38 (Tex. Civ. App. 1962) (stating "[i]t is unnecessary to a decision of this case, but it has been held that . . . a defendant has a reasonable time after the end of a storm to clean its lot"). Our holding does not overlook the premise for those opinions: That action will be impractical and inexpedient during precipitation. Our examination of this jurisprudence makes that abundantly clear.

The premise of the opinions invoking the ongoing-storm rule is that categorically it would be factually inexpedient and impractical to attempt reasonable efforts to remove or reduce known foreseeable snow or ice hazards while precipitation is falling. We disagree. Sometimes it is impractical; other

---

[4] The Iowa Supreme Court was recently asked to address the continuing validity of the ongoing-storm doctrine, but declined to do so. Alcala v. Marriott Int'l, Inc., 880 N.W.2d 699, 711-12 (Iowa 2016).

times it is not. But an absolute judicial finding usurps the jury's consideration of reasonableness (especially when weighed against the important risk imposed to invitees and pedestrians) and "'suspends a property owner's general duty to exercise reasonable care'" as to "'snow and ice hazards'" while precipitation is falling. See Laine, 177 A.3d at 1233, n.19 (quoting Alcala, 880 N.W.2d at 711). In explaining and justifying the imposition of the ongoing-storm rule, one court stated:

> "It is patently unfair to make a landowner absolutely liable for every slip-and-fall accident on snow in a lot, especially as this would require the owner to spend the entire winter clearing the lot on pain of losing a liability suit. Moreover, it is equally unfair to require the lot owner to shoulder the expense of plowing and replowing the lot during the course of a continuous storm. In this vein, many jurisdictions have ruled that there is no liability for an accident that takes place while a storm is still going on or a reasonable time thereafter, to give the owner a chance to clear out the lot."
>
> [Id. at 1232-33, n.18 (quoting 74 A.L.R.5th 49 (originally published in 1999)).]

Of course, we are not imposing strict liability or any mandate that a commercial landowner must always—under every circumstance—"shoulder the expense of plowing and re-plowing" a parking lot (or any other part of the commercial premises) during a "continuous storm" for the "entire winter." That would be entirely unreasonable to do. Indeed, recognizing that

21

landowners should be encouraged "'to try to clear all public areas of snow and ice during and after snowstorms,'" Laine emphasized that landowners "'should not fear legal liability for not clearing every inch of their property during an all-day snowstorm.'" Id. at 1232, n.18 (emphasis added) (citation omitted).

Thus, our holding should not be misinterpreted to mean that commercial landowners are "'absolutely liable for every slip-and-fall [injury sustained] . . . . during the course of a continuous storm,'" or that such owners are required to clear "'every inch of their property during an all-day snowstorm.'" Ibid. (citations omitted). But even the court in Laine admitted—in response to the plaintiff's argument that adherence to the ongoing-storm rule would make the landowner "lax in its duty to make safe any dangerous condition on the land"—that "[t]here is admittedly surface appeal to the argument that if a business is open, it has to be diligent to make its premises safe." Id. at 1232. In Laine, the court found—in not placing weight on that "surface appeal"—that factually it would be impracticable and inexpedient to take any action because "a thin coat of ice can be slippery and hard to eradicate even with salting or chemicals." Ibid. We believe that should generally be a jury question, especially like here where there is expert opinion evidence that suggests otherwise.

A-2111-18T3

Imposing a rigid judicial declaration that all action would always be useless or excessive, ignores the main aim of tort law, and overlooks situations where a commercial landowner's ordinary effort to remove or reduce snow and ice hazards would be reasonable. To permit commercial landowners under every circumstance to wait until the end of a storm before taking any reasonable precautions, or to attempt removing or reducing known precipitation hazards, would arbitrarily create a rigidity in the law inconsistent with the innumerable variables that are possible. That leads us to our next section where we explain the duty's legal basis.

(iii) The Imposition of a Duty

"The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." Shields v. Ramslee Motors, 240 N.J. 479, 487 (2020) (quoting Robinson v. Vivirito, 217 N.J. 199, 208 (2014)). Whether to impose a common law duty depends on an analysis of such factors as "the relationship of the parties," the foreseeability and nature of the risk of harm, "the opportunity and ability to exercise care" to avoid the harm, "the public interest," and ultimately "notions of fairness" and "common sense." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 443 (1993). Our Supreme Court precedent establishes that whether a

duty of care exists is a question of law that must be decided by the court. Jerkins v. Anderson, 191 N.J. 285, 294 (2007).

The first Hopkins factor—the relationship of the parties—weighs in favor of imposing a duty. Historically, a landowner's liability for injuries sustained on its property was predicated on the injured person's status. Hopkins, 132 N.J. at 433. That status depended on one of three classifications: Business invitee, licensee, or trespasser. Ibid. (explaining what degree of care is required for each classification). "Because public policy and social values evolve over time, so does the common law." Id. at 435. The Court therefore concluded that "[b]ased on the nature and circumstances surrounding an open house . . . implicit in the broker's invitation to customers is some commensurate degree of responsibility for their safety while visiting the premises." Id. at 441. Here, tenants, visitors, and members of the general public utilize public sidewalks, and a commensurate degree of responsibility for their safety requires a commercial landowner act in a reasonably prudent manner to remove or reduce known foreseeable snow and ice hazards.

The second Hopkins factor—the foreseeability and nature of the risk of harm—weighs in favor of imposing a duty. The risk of injury from known snow and ice is indeed foreseeable. Id. at 450 (stating "some hazards are relatively commonplace and ordinary . . . for their danger to be understood by

average persons"). Hazards from snow and ice are "much more common" than, for example, dilapidated sidewalks. Mirza, 92 N.J. at 395. Thus, the harm caused by failing to remove or reduce foreseeable and known snow or ice hazards is obvious.

The third Hopkins factor—the opportunity and ability to exercise care—weighs in favor of imposing a duty. "[T]he duty to remove snow and ice is more important and less onerous than the general duty of maintenance imposed in Stewart." Ibid. Tort law considers how imposing a duty would work in practice. Hopkins, 132 N.J. at 443 (citing Weinberg, 106 N.J. at 469). The consequences from imposing a duty of care would not be unreasonably burdensome because the duty to remove or reduce foreseeable and known snow or ice hazards is predicated on reasonableness.

The fourth Hopkins factor—the public interest—weighs in favor of imposing a duty. Imposing a duty of care on commercial landowners serves the public interest by protecting tenants, visitors, and the general public against foreseeable and preventable dangers that arise from a failure to act in a reasonably prudent manner under the circumstances to remove or reduce known snow and ice hazards. "The many innocent plaintiffs that suffer injury because of unreasonable accumulations should not be left without recourse." Mirza, 92 N.J. at 395. As our Court has explained, "one of the main functions

of tort law is to prevent accidents," and "[o]ne of the central rationales for imposing liability in tort law is to deter tortious behavior." Hopkins, 132 N.J. at 448. Imposing a duty of care on commercial landowners serves that aim. Commercial landowners should be encouraged to eliminate or reduce the dangers that may be reasonably, readily abated. Mirza, 92 N.J. at 395.

Ultimately, the Hopkins analysis comes down to "notions of fairness" and "common sense." Hopkins, 132 N.J. at 443. We conclude it is fair to impose a duty of ordinary and reasonable care on commercial landowners because—under all the circumstances—they are well positioned to remove or reduce foreseeable known snow and ice hazards.

Finally, "'municipal ordinances do not create a tort duty, as a matter of law.'" Smith v. Young, 300 N.J. Super. 82, 95 (App. Div. 1997) (quoting Brown v. St. Venantius Sch., 111 N.J. 325, 335 (1988)). "For example, a plaintiff's cause of action cannot be based upon the specific duty to remove snow and ice imposed by [a] municipal ordinance enacted pursuant to the statute which empowers municipalities to require landowners or tenants 'to remove all snow and ice . . . within twelve hours of daylight.'" Ibid. (second alteration in original) (quoting N.J.S.A. 40:65-12). However, a municipal ordinance may be used as a "basis for persuading the finder of fact that the

defendant acted unreasonably [under] the circumstances."[5] Id. at 96. Thus, the municipal ordinance here did not create a tort duty, and should a municipal ordinance become evidential on this question, a concomitant limited instruction should be given.

## (iv) The Duty

We hold that a commercial landowner has a duty to take reasonable steps to render a public walkway abutting its property—covered by snow or ice—reasonably safe, even when precipitation is falling. The commercial landowner's liability may arise only if, after actual or constructive notice, it fails to act in a reasonably prudent manner to remove or reduce the foreseeable hazard. This holding should not be misread to impose absolute liability for every slip-and-fall injury sustained during a continuous storm, to require such landowners to take unreasonable precautionary measures, or to immediately clear every inch of their property from all amounts of snow or ice falling during a storm. The duty of ordinary care requires nothing more than expecting a commercial landowner to act in a reasonably prudent manner under all circumstances.

---

[5] Section 28-16 of the Borough's ordinance on removal of snow and ice from sidewalks does not prohibit a landowner from "pre-treating or addressing conditions as they develop," as explained by Nolte.

Reasonableness is generally a jury question. To assess reasonableness of a commercial landowner's conduct, a jury may consider: (1) Whether any action would be inexpedient or impractical; (2) the extent of the precipitation, including the amount of snow or ice accumulation; (3) the timing of the precipitation, whether it's day or night; (4) the nature of the efforts, if any, to prevent, remove, or reduce snow or ice accumulation, especially whether conditions were so hazardous as to make it unsafe for the landowner or any contractor to venture out in the elements; (5) the minimal usage consequent on a "closed" facility in contrast to a normal work week; (6) the number of individuals expected to use the public sidewalk, premises, and the area in need of attention; (7) the past, current, and anticipated weather conditions, including but not solely dependent on reliable weather predictions, and the practicality of reasonable safety measures or methods of ingress or egress; and (8) any other relevant factors.

## III.

Having held that a commercial landowner has a duty to take reasonable steps to render a public walkway abutting its property—covered by snow or ice—reasonably safe, even when precipitation is falling, we conclude that disputed issues of material fact preclude summary judgment in defendant's favor.

28

First, there are fact issues about whether defendant had actual or constructive notice of the dangerous condition. At this point, we give plaintiff the benefit of all reasonable inferences on the notice question. For example, we accepted: (1) Defendant knew about the previous storms beginning on January 6, and the sustained colder-than-usual sub-freezing temperatures; (2) the VP regularly monitored weather conditions by watching the Weather Channel, and informed Lowe's about upcoming storms so that "they" would be prepared to address the elements;[6] (3) the advisory, together with the totality of all the circumstances, warned of an upcoming mix of snow and sleet and that icy conditions would likely exist on untreated surfaces, which defendant received twenty-eight hours before the accident; and (4) the supervisor experienced slippery road conditions on the morning of the accident near defendant's property. On the other hand, we recognize that the VP had no recollection of informing Lowe's about the storm, which may imply—even in the face of everything else—that he did not know about the anticipated icy conditions.

---

[6] See N.J.R.E. 406 (setting forth the basis for the admissibility of evidence of habit or routine practice to prove "on a specific occasion a person . . . acted in conformity with the habit or routine practice").

Second, there are genuine issues of material fact about whether defendant acted reasonably under all the circumstances by not acting in any way to prevent, remove, or reduce hazards associated with the precipitation. Although the judge concluded defendant owned no duty of care to plaintiff, he still resolved the question of reasonableness by finding:

> It would not have been possible for . . . defendant[] as a practical matter to remediate the ice . . . if it's still raining.[7]   If you put down anything it would get washed away and then re-freeze.  So, if you put down sand, the ice is still forming.  Sand would work if it stays on top[,] but if it gets buried into the ice then that doesn't work.
>
> I'm trying to . . . think of some practical way to say that something could have been done but as a practical matter, nothing I could think of on my own [would work.]
>
> . . . .
>
> I just can't imagine what they would have done.  If you cleared the ice, it's still raining and still freezing.  The ice comes right back. . . .  [T]here's no practical way . . . to deal with any of this.

The judge might ultimately be correct, but whether defendant's inaction was reasonable was a question for the jury.  Nolte opined that the ASTM describes numerous techniques for snow and ice control, including preparatory, pre-storm application of anti-icing, de-icing, and abrasive

---

[7] Plaintiff testified that it was "drizzling" sleet.

materials, and monitoring and treating walkway surfaces for refreezing. He also referred to other techniques noting that "[e]ffective snow management is anticipatory." Thus, whether defendant acted reasonably under all the circumstances by failing to take any precautionary measures and waiting for the precipitation to end is a question for the jury.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION