746 A.2d 1 (2000)
Arthur MOORE, Plaintiff-Appellant,
v.
SCHERING PLOUGH, INC. and A-L Services, Inc., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 2000.
Decided February 7, 2000.
*2 Dean S. Pashaian, for plaintiff-appellant (Rothenberg & Pashaian, attorneys; Andrew J. Zuckerman, on the brief).
Gary L. Riveles, for defendant-respondent, Schering Corporation (Dughi & Hewit, attorneys; Mr. Riveles, on the brief).
Mary Adele Hornish, Livingston, for defendant-respondent, A-L Services, Inc. (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Ms. Hornish, on the brief).
Before Judges KING, CARCHMAN and LEFELT.
The opinion of the court was delivered by KING, P.J.A.D.

I
This is an appeal from a summary judgment in favor of a commercial landowner and a snow-removal contractor. The motion judge ruled that the landowner had "no duty" to the security guard plaintiff to clear snow and ice on the walkway between buildings where he fell during his regular evening rounds.
We disagree. We hold that in this context, the owner had a duty to use reasonable care under all the circumstances for the safety of the security guard while on his rounds. Whether the landowner reasonably discharged this duty of care was a fact question for the jury in this circumstance. As to the liability of the snow-removal contractor, the motion judge made no ruling on its duty to the plaintiff but apparently granted summary judgment because the owner had no duty. We reverse and remand as to both defendants.

II
This action arises from a slip-and-fall on ice and snow which took place at about 6:30 p.m. on December 29, 1993. Plaintiff Arthur Moore worked as a security guard for Wachenhut Security Services (Wachenhut). Defendant Schering Corporation hired Wachenhut, an independent contractor, to provide around-the-clock security services at its extensive Union, Essex County facility. While performing his normal rounds as a security guard plaintiff slipped and fell on an accumulation of snow and injured his leg and wrist severely.
Plaintiff fell while walking between two buildings. He claimed he fell on the sidewalk connecting the two buildings. The record suggests that he might have slipped and fallen on a macadam ramp connecting a concrete apron or "sidewalk" area between the buildings and the macadam parking lot. There is a dispute in the record about the snow-removal contractor's, A-L Services, Inc. (A-L), responsibility to clear macadam ramps connecting the parking lots and the sidewalks. A-L claims it only had a duty under the contract to clear the macadam parking areas and access routes, not ramps to the concrete walkways. Schering contends to the contrary.
Plaintiff reported to work at 4 p.m. By the time he slipped and fell at 6:30 p.m., plaintiff recalled that the snow had been falling about seven hours. He described the snow fall as "heavy." The snow where he fell was "at least three inches" deep. He never saw anyone plowing or shoveling snow in the area where he fell. On the day of the accident, Wednesday, December 29, the Schering complex was closed for normal operations because of the holiday week between Christmas and New Year.
Schering had engaged A-L for snow removal services. These services clearly *3 included the road access for motor vehicles and the parking areas. A-L's services did not normally include the sidewalk areas between the buildings. The record is not clear about A-L's obligation to clear snow from the transitional macadam ramps between the concrete sidewalks and the parking areas. As noted, Schering claims and A-L denies any duty to clear these ramps.
On the day of the accident, the record is clear that A-L started clearing the roads and parking areas at 3 p.m. and continued until 7 p.m. A-L continued clearing on the next day from 5 a.m. until 2:30 p.m. For snow removal on sidewalks in the multi-building complex, Schering usually used a "snow-removal-team" of its volunteer employees activated as the need arose by its maintenance foreman. No "snow-removal teams" worked on the day of the accident, apparently because the facility was closed for normal operations. The record contains a Schering "Snow Removal Priority Schedule" which states:

SNOW REMOVAL PRIORITY SCHEDULE
IN THE EVENT OF A HEAVY SNOWFALL AND THE PLANT IS CLOSED, PROVISIONS HAVE TO BE MADE FOR ACCESS OF EMERGENCY VEHICLES TO ENTER PROPERTY. ALSO, PERSONNEL IN THE BOILER HOUSE, U-14, U-12, U-1 NEED AT LEAST FOOT PATHS TO GET IN AND OUT. THIS IS THE EXCEPTION BUT IT CAN OCCUR.
The schedule demonstrates Schering's concerns about pedestrian access to at least some buildings. Plaintiff claims he fell just outside Building U-12. The snow protocol also said that: "During weekend and off hours ... the Plant Security Officer" should alert Scherings maintenance supervisor, Walter Tyrkala, and "relay the weather information so that he can make the necessary arrangements for snow removal." Under "Exceptions" the protocol also states:
IF ICY CONDITIONS ON WALKS, ROADWAY, ETC, CALL WALTER TYRKALA. THE ONLY EXCEPTION WILL OCCUR WHEN THE GUARD IS NOTIFIED IN WRITING THAT PREVIOUS ARRANGEMENTS HAVE BEEN MADE.
The motion judge concluded that plaintiff's accident was caused by a risk inherent in his employment. The judge found that defendant Schering has no duty to the plaintiff in the circumstance to exercise reasonable care in cleaning snow and ice from the walkways. The judge did not reach the merits of the claim against A-L; he assumed plaintiff fell on the sidewalk, an area unrelated to A-L's snow-removal contract.

III
The narrow issue here is the duty owed to a security guard with respect to ice and snow accumulating on walkways traveled on his usual rounds. We reject Scherings' claim that "no duty" is owed. We find a duty of reasonable care under these circumstances appropriate. We, at the least, strongly so implied in Blessing v. T. Shriver and Co., 94 N.J.Super. 426, 439, 228 A.2d 711 (App.Div.1967), where a security guard slipped and fell on a hazardous but transitory condition from a water leak while making his rounds in a foundry. Judge Lewis said that the foundry owner was not "immunized from common law tort liability" as a special employer because of plaintiff's status as a security guard employed by an independent contractor, id. at 439, 228 A.2d 711, and because the hazardous condition was known to defendant's foreman.
In the circumstances reasonable men could infer that the floor of the foundry was slippery at the point where plaintiff fell, and that the leakage of water on the sandy floor, causing that condition, should have been remedied through the exercise of reasonable care. The evidence *4 was sufficient to raise a fact question to be resolved by the jurors. Bell v. Eastern Beef Co., 42 N.J. 126, 129, 130, 199 A.2d 646 (1964); Bozza v. Vornado, Inc., 42 N.J. 355, 360-361, 200 A.2d 777 (1964).

[Id. at 440, 228 A.2d 711.]
As a general rule, a landowner has "a nondelegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers." Rigatti v. Reddy, 318 N.J.Super. 537, 541, 723 A.2d 1283 (App.Div.1999). This general rule protects individuals performing work on the premises of the landowner, most commonly independent contractors and their employees. Id. However, "the landowner `[i]s under no duty to protect an employee of an independent contractor from the very hazard created by doing the contract work.'" Id. at 541-42, 723 A.2d 1283 (citing Dawson v. Bunker Hill Plaza Assocs., 289 N.J.Super. 309, 318, 673 A.2d 847 (App.Div.), certif. denied, 146 N.J. 569, 683 A.2d 1164 (1996), quoting Sanna v. National Sponge Co., 209 N.J.Super. 60, 67, 506 A.2d 1258 (App.Div.1986)). "An independent contractor is one `who, in carrying on an independent business, contracts to do a piece of work according to his own methods without being subject to the control of the employer as to the means by which the result is to be accomplished but only as to the result of the work.'" Rigatti, 318 N.J.Super. at 542, 723 A.2d 1283. This exception is carved out of the landowner's general duty to protect invitees because "the landowner may assume that the independent contractor and [its] employees are sufficiently skilled to recognize the dangers associated with their task and adjust their methods accordingly to ensure their own safety." Id. Stated differently:
The duty to provide a reasonably safe place to work is relative to the nature of the invited endeavor and does not entail the elimination of operational hazards which are obvious and visible to the invitee upon ordinary observation and which are part of or incidental to the very work the contractor was hired to perform.

[Id.]
The motion judge ruled that "a security guard has to take the risk of weather" and that slipping on snow or ice was a "risk of employment."
The exceptions to the duty of reasonable care owed by an owner to business invitees invariably involve the "very work the contractor was hired to perform," Rigatti, 318 N.J.Super. at 541-42, 723 A.2d 1283, such as operational hazards inherent in repairing a defective roof. Ibid. See Dawson, 289 N.J.Super. 309, 673 A.2d 847 (owner owed no duty to carpenters; general contractor owed them a duty of reasonable care); Cassano v. Aschoff, 226 N.J.Super. 110, 543 A.2d 973 (App.Div.1988) (employee of tree removal contractor struck by falling limb).
We find no specific cases in other jurisdictions concerning a security guard hurt in a fall on snow and ice while making his rounds. Cases in other jurisdictions vary on the general duty owed to a security guard. Alabama has a strict "no duty" rule in favor of the owner. Wallace v. Tri-State Motor Transit Co., 741 F.2d 375, 376 (11th Cir.1984). Indiana holds the owner to a duty of reasonable care to a security guard, the usual duty owed to a business invitee. Pucalik v. Holiday Inns, Inc., 777 F.2d 359, 363 (7th Cir.1985). Several jurisdictions bar claims by security guards who are victims of violent assaults in the course of their duties, and understandably so. See Geter v. Maten, 626 So.2d 366 (La.App.1993); Carter v. Mercury Theater Company, 146 Mich.App. 165, 379 N.W.2d 409 (1985); Rowley v. Mayor and City Council of Baltimore, 60 Md.App. 680, 484 A.2d 306 (1984).
Under the facts in this record, the plaintiff claims he was walking in a common area performing his regular security duties. He claims that he personally had nothing to do with snow removal on the *5 walkways. No one claims he did. His superiors may have had a duty to notify Schering's maintenance foreman when the snow started. But no one disputes A-L was alerted and underway with removal of snow from the roads and parking areas several hours before plaintiff's accident. Nothing was done by Schering about the walkways, whether because of indifference, or oversight, or the plant closure for the holiday week. We gather from this record that Schering's snow-removal protocol applicable to walkways usually was implemented within a reasonable time-frame when the facility was open for normal business. On a normal Wednesday, the walk probably would have been promptly cleared.
In this situation, we conclude that defendant Schering had a duty of reasonable care to plaintiff with respect to snow and ice accumulation, under all relevant circumstances. He was a business invitee owed a duty of reasonable care at the time of his injury, even as to weather conditions. See Merkel v. Safeway Stores, Inc., 77 N.J.Super. 535, 538-40, 187 A.2d 52 (Law Div.1962), cited with approval in Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 159, 432 A.2d 881 (1981), on duty to business invitees with respect to ice and snow. The relevant circumstances here may include the extent and timing of the snowfall, the time of day or night, the nature of the efforts actually taken by the owner to maintain the premises, the practicality of cleaning up in stages or by priorities, the plaintiff's care for his own safety including his foot wear, the minimal usage consequent on the "closed" facility in contrast to a normal work week, and any other pertinent factors. These are all matters for jury considerations.
As to A-L, the judge made no specific finding with respect to its liability to plaintiff. We include A-L in the remand partly because the record is unclear where the fall occurred. Schering claims the fall was on a macadam ramp or apron which A-L should have cleared. There are also indemnity and breach of contract claims by Schering against A-L which may become viable because of our reversal as to Schering. A-L may, of course, renew its motion for summary judgment and seek exoneration on plaintiff's claim, or on the cross-claims, but we cannot say on the state of this record that A-L is entitled to judgment as a matter of law.
Reversed and remanded.