821 A.2d 1168 (2003)
360 N.J. Super. 156
Joseph LA RUSSA, Plaintiff-Appellant,
v.
FOUR POINTS AT SHERATON HOTEL, Lenat Development Company Limited and Prime Hospitality Corporation, Defendants, and
High Grade Beverage Corp., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 26, 2003.
Decided May 14, 2003.
*1170 Stephanie A. Mitterhoff, Scotch Plains, argued the cause for appellant (Ethan Jesse Sheffet, attorney, Verona; Ms. Mitterhoff, of counsel; Mr. Sheffet and Ms. Mitterhoff, on the brief).
Christopher J. Kinsella, argued the cause for respondent (Lacorte, Bundy, Varady & Kinsella, attorneys, Union; Kenneth A. Seltzer, Old Bridge, on the brief).
Before Judges CONLEY, NEWMAN and CARCHMAN.
*1169 The opinion of the court was delivered by CARCHMAN, J.A.D.
In this appeal, we address the duty of a delivery person to notify a possessor of land of a dangerous condition caused by the actions of the delivery person. We conclude that where a beer delivery person tracked in an inordinate amount of snow to create a pool of water covering an area of approximately five feet at a depth of oneeighth inch, the delivery person owed a duty to notify the possessor of such condition. We reverse the order of the Law Division dismissing the complaint.
These are the relevant facts. On March 17, 1997, at approximately noon and during the "lunchtime rush," plaintiff Joseph La Russa, a bartender and waiter at the Sheraton Hotel, was walking from the lounge area of the hotel to the kitchen when he slipped and fell in a puddle of water "five feet in area" and one-eighth of an inch deep, located directly in front of the walkin beer cooler near the entrance to the kitchen. The floor in this area was covered with ceramic tile. The weather conditions outside were "icy, snowy, [and] rainy."
Plaintiff had noticed the delivery person, Scott Thomas Rogers, employed by defendant High Grade Beverage Corp., tracking in snow with his hand truck approximately twenty-five minutes before plaintiff fell, and alerted Rogers to the accumulation of snow. Rogers did not respond. Although it was the responsibility of all hotel employees to clean up spills on the hotel premises, plaintiff neither reported the existence of snow to anyone at the hotel nor cleaned the area himself.
Rogers, who had no independent recollection of the delivery or incident, admitted that his hand truck would track in snow or debris during a snow storm. He did not believe it was his responsibility to clear away a "pile of snow or a little bit of water" even if he tracked it in nor considered it his responsibility to notify anyone on the premises that he had brought in snow or water. As he explained, "It is generally acknowledged that I am there to make a delivery. Just like if the snow was not shoveled, I am not shoveling the snow. If I can make the delivery, I make it; and then if I can't, I can't." Rogers did concede that he would meet an employee on duty before making the delivery, who would then direct him where to deliver the goods.
We address the issue of duty recognizing that whether a person owes a duty of reasonable care toward another is a question of law. Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502, 694 *1171 A.2d 1017 (1997); Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993); Wang v. Allstate Ins. Co., 125 N.J. 2, 15, 592 A.2d 527 (1991); Sanchez v. Indep. Bus Co., Inc., 358 N.J.Super. 74, 80, 817 A.2d 318 (App.Div.2003).
The imposition of a duty requires a balancing of competing interests and considerations. In determining whether to impose a duty, we
must engage in a rather complex analysis that weighs and balances several, related factors, including the nature of the underlying risk of harm, that is, its foreseeability and severity, the opportunity and ability to exercise care to prevent the harm, the comparative interests of, and the relationships between or among, the parties, and, ultimately, based on considerations of public policy and fairness, the societal interest in the proposed solution. See Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993).
[J.S. v. R.T.H., 155 N.J. 330, 337, 714 A.2d 924 (1998).]
Our analysis is fact-specific and "must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct." Hopkins, supra, 132 N.J. at 439, 625 A.2d 1110; Sanchez, supra, 358 N.J.Super. at 81, 817 A.2d 318. In determining whether to impose a duty, we "must also consider the scope or boundaries of that duty." J.S., supra, 155 N.J. at 339, 714 A.2d 924 (citing Kelly v. Gwinnell, 96 N.J. 538, 552, 476 A.2d 1219 (1984)).
We impose a duty where foreseeable events posing a risk of harm necessitate that a duty of due care be imposed on those able to prevent the harm. Included within the scope of that duty is the obligation to warn of a known or apparent danger. See, e.g., Clohesy, supra, 149 N.J. at 514-16, 694 A.2d 1017 (imposing a duty on the owner of a supermarket to provide security or warnings in his parking lot to protect customers where there had been a large number of criminal incidents on his premises the previous two-and-a-half years); Wlasiuk v. McElwee, 334 N.J.Super. 661, 760 A.2d 829 (App.Div.2000) (imposing a duty of care and warning on a driver who allowed a stranger to ride in his car where his passenger was shot by the stranger as it was foreseeable that allowing a stranger to ride in the vehicle would lead to danger). See also J.S., supra, 155 N.J. at 352, 714 A.2d 924 (imposing a duty on the wife of a sex offender to prevent or warn her neighbors of her husband's sexual abuse or propensity for sexual abuse); James v. Arms Tech., Inc., 359 N.J.Super. 291, 328, 820 A.2d 27 (App.Div. 2003) (imposing a duty on gun manufacturers of a more supervised scheme of distribution of weapons sold in Newark as it was foreseeable that the misuse of handguns would result in large costs to the city). Even the simplest gesture, such as a friendly wave by a motorist signaling another motorist to pull out in front of him, created a duty of care as it was reasonably foreseeable that the driver waved into traffic would rely on the gesture, and the risk of harm from any resulting accidents would be "serious." Thorne v. Miller, 317 N.J.Super. 554, 559, 722 A.2d 626 (Law Div.1998).
We have declined to impose a duty where the circumstances were so remote that the imposition of such duty would impose an unfair burden. See, e. g., Taylor ex rel. Taylor v. Cutler, 306 N.J.Super. 37, 703 A.2d 294 (App.Div.1997) (declining to impose a duty to an infant where a driver *1172 was involved in an accident and the infant was not conceived at the time of the accident, but was born seven years later), aff'd, 157 N.J. 525, 724 A.2d 793 (1999). The seller of a home had no duty to inform the buyer that the neighbor did not like the home and had made numerous complaints about the home. Levine v. Kramer Group, 354 N.J.Super. 397, 405, 807 A.2d 264 (App.Div.2002) ("We do not hold that sellers and brokers have a duty to investigate or disclose transient social conditions in the community that arguably affect the value of property.") (quoting Strawn v. Canuso, 140 N.J. 43, 64, 657 A.2d 420 (1995)). A bus company did not owe a duty to its passengers who were shot by another passenger as the bus company was unaware that the passenger was armed and "had no reason to know of [the passenger's violent predispositions." Sanchez, supra, 358 N.J.Super. at 84, 817 A.2d 318. We refused to impose the "extreme" duty of requiring all buses to have security guards as passengers. Id. The owner of a pool was under no duty to warn his social guest, who had swam in the pool on twenty prior occasions, about the varying depths of the pool. Tighe v. Peterson, 175 N.J. 240, 814 A.2d 1066 (2002). Finally, the manufacturer of a water softener did not have a duty to a man who suffered a heart attack after seeing rust-colored water come out of his faucet as it "was an extraordinary occurrence, not reasonably to be expected in a normal person and so must have constituted an idiosyncratic reaction by this particular plaintiff." Caputzal v. Lindsay Co., 48 N.J. 69, 76, 222 A.2d 513 (1966).
Here, the risk that someone would slip on the five-foot puddle was both serious and foreseeable. This condition and attendant risk was in a corridor between a restaurant and kitchen and immediately adjacent to a cooler. Defendant asserts that the hotel had the absolute duty to clean up the puddle. "A landowner has `a non-delegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers.' " Rigatti v. Reddy, 318 N.J.Super. 537, 541, 723 A.2d 1283 (App.Div.1999) (quoting Kane v. Hartz Mountain Indus., 278 N.J.Super. 129, 140, 650 A.2d 808 (App.Div.1994), aff'd, 143 N.J. 141, 669 A.2d 816 (1996)); see also Moore v. Schering Plough, Inc., 328 N.J.Super. 300, 305, 746 A.2d 1 (App. Div.2000). The hotel certainly had a duty to plaintiff.[1] But that obligation does not relieve the party that created the hazard from liability.
Similarly, defendant argues that as an independent contractor, it had no responsibility to either notify or clean the area. Defendant was an independent contractor. See Moore, supra, 328 N.J.Super. at 305-06, 746 A.2d 1 ("An independent contractor is one `who, in carrying on an independent business, contracts to do a piece of work according to his own methods without being subject to the control of the employer as to the means by which the result is to be accomplished but only as to the result of the work.' ") (quoting Rigatti, supra, 318 N.J.Super. at 542, 723 A.2d 1283). But that status alone is not dispositive.
Defendant's assertion that it had no duty to warn of an open and obvious danger is also misplaced as such notion only applies to the duty of the possessor of land. See Restatement (Second) of Torts, § 343A(1) (1965) ("A possessor of land is *1173 not liable to his invitees for physical harm caused to them by any ... condition on the land whose danger is known or obvious to them[.]") (emphasis added).
The Restatement speaks to the issue:
One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land.
[Restatement (Second) of Torts, supra, § 383.]
The comment to § 383 addresses the obligation imposed on both the possessor of the property and its independent contractors:
The words "acting on behalf of the possessor" are used to indicate that the person in question is acting not only for the purposes of the possessor but also by his direction or consent and therefore by his authority. One acting on behalf of the possessor may do so as a servant or as an independent contractor. The fact that the person acting on behalf of the possessor is doing so as his servant rather than as an independent contractor, whether for pay or gratuitously, may be important in determining whether the possessor is subject to liability for the manner in which such person carries out the directed activity. It does not, however, affect the liability of the person who is acting on behalf of the possessor.

[Id. comment a (emphasis added).]
Although not instructed in the manner of unloading, defendant was directed to an area for unloading and performed that function for the benefit of itself and the hotel.
Defendant's relationship to the hotel is a factor in determining whether to impose a duty. So, too, is the parties' opportunity and ability to exercise care. See J.S., supra, 155 N.J. at 337, 714 A.2d 924. The delivery person was on the premises to serve the common interests of the hotel and defendant. The results of tracking in enough snow and water to create a fivefoot puddle were obvious and easily foreseeable; the severity of the harm created by this condition readily apparent; the opportunity to notify of the condition and insure prevention of the obvious danger readily available and the fairness of imposing such duty indisputable.
Defendant claims that the custom in the industry precludes the imposition of a duty to notify. Even if it is the custom of a delivery person not to alert the premises owner of a hazard that he has created, the custom is wrong. See United States v. Carroll Towing Co., 159 F.2d 169, 173, reh'g denied, 160 F.2d 482 (2d Cir.1947); see also The T.J. Hooper, 60 F.2d 737, 740 (2d Cir.) (holding that tugs not equipped with radios were unseaworthy despite the custom among carriers to rely upon their crews to supply their own radios noting, "Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission."), cert. denied, 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1932). As noted by Judge Learned Hand in imposing a duty on a barge company to post an employee on its barges during daytime working hours although the custom was to the contrary:
Since there are occasions when every vessel will break from her moorings, and since, if she does, she becomes a menace to those about her; the owner's duty, as in other similar situations, to provide *1174 against resulting injuries is a function of three variables: (1) The probability that she will break away; (2) the gravity of the resulting injury, if she does; (3) the burden of adequate precautions. Possibly it serves to bring this notion into relief to state it in algebraic terms: if the probability be called P; the injury, L; and the burden, B; liability depends upon whether B is less than L multiplied by P: i.e., whether B less than PL.
[Carroll Towing Co., supra, 159 F. 2d at 173-74.]
Applying Judge Hand's formula here, the probability that someone will slip and injure themselves in a five-foot puddle of water is significant and can be prevented by the minimal and non-burdensome act of notifying one of the hotel employees of the condition.
The scope of the duty is "determined by the `totality of the circumstances.' " Thorne, supra, 317 N.J.Super. at 560, 722 A.2d 626 (quoting Clohesy, supra, 149 N.J. at 514, 694 A.2d 1017); see also Sanchez, supra, 817 N.J.Super. at 81, 817 A.2d 318. "Factors used to determine the scope of a duty include the risk of harm and practicality of preventing it, and where the relevant behavior is easy to correct and the consequential harm serious, it is fair to impose a duty." Thorne, supra, 317 N.J.Super. at 560-61, 722 A.2d 626 (citing J.S., supra, 155 N.J. at 339-40, 714 A.2d 924). We acknowledge that delivery persons will track in snow or water when the weather conditions are "icy, snowy, [and] rainy." We recognize as well that slips and falls may occur on even the smallest amount of water or other debris, see Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 818 A.2d 314 (2003) (holding plaintiff who slipped on a grape that was among six grapes scattered within a threefoot diameter was entitled to a mode-of-operation jury instruction), but when the accumulation of water approximates five feet in area, the duty of notification is neither burdensome nor unreasonable recognizing the danger involved and the probability of a fall. Balancing the factors enunciated by the Court in J.S., we conclude that the delivery person had a duty to notify the hotel of the obvious danger caused by his activities.
We add a word of caution. We have identified the duty owed by the delivery person, but on the limited record before us, we make no determination as to whether that duty has been breached. That issue will be determined by the trier of fact, at which time defendant may defend and raise any relevant defenses including comparative negligence and the relevance of plaintiff's communication to Rogers.
Reversed and remanded.
NOTES
[1] Plaintiff, as the hotel's employee, fell within the scope of the Workers' Compensation Act, N.J.S.A. 34:15-1 to-142.