**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0833-20

DEBORAH DERRICOTT,

    Plaintiff-Appellant,

v.

OCEAN TERRACE LUXURY
CONDOMINIUMS, MAX
GURWICZ & SON ENTERPRISES,
OCEAN TERRACE
CONDOMINIUM ASSOCIATION,
INC., and MAX GURWICZ &
SONS SALES, INC.,

    Defendants-Respondents,

v.

GUARDPRO SECURITY, INC.,

    Third-Party Defendant-
    Respondent.

_____

Argued December 15, 2021 – Decided February 28, 2022

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1306-19.

David T. Wright argued the cause for appellant (The Wright Law Firm, attorneys; David T. Wright, on the brief).

Robyn F. McGrath argued the cause for respondent Ocean Terrace Luxury Condominiums and Ocean Terrace Condominium Association, Inc. (Sweeney & Sheehan, PC, attorneys; Robyn F. McGrath, on the brief).

PER CURIAM

Contending a genuine issue of material fact existed as to whether she was working as a security guard when she was assaulted on the condominium defendants' property, plaintiff Deborah Derricott appeals an order granting the condominium defendants' summary-judgment motion.[1]   Agreeing with Judge James P. Savio that no genuine issue existed, we affirm.

---

[1]  Plaintiff referred to "Ocean Terrace Association, Inc." as "Ocean Terrace Condominium Associates, Inc." in the caption of the complaint.  We use "Ocean Terrace Condominium Association, Inc." in the caption because defendant used that name in its court submissions.   We refer to Ocean Terrace Luxury Condominiums and Ocean Terrace Condominium Association, Inc. collectively as the "condominium defendants."

A-0833-20

## I.

We glean these facts from the summary-judgment record, viewing them in the light most favorable to plaintiff, the party opposing summary judgment. See Richter v. Oakland Bd. of Educ., 246 N.J. 507, 515 (2021) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

For purposes of the summary-judgment motion, the parties did not dispute the circumstances of plaintiff's injury: while lawfully present in the condominiums' garage, plaintiff was assaulted by someone trying to steal a bicycle. The parties disputed whether she had been employed as a security guard and, thus, had been injured while acting in the scope of her employment.

The condominium defendants did not have any security-related employees. Instead, they retained GuardPro Security, Inc. (GuardPro) to provide security guards and maintain security for the residents of the building. GuardPro had been the security company for the condominium defendants for several years before plaintiff's assault. The condominium defendants' vice president described the typical services provided by GuardPro as including a "concierge service for the lobby and periodically just checking exit doors leading from the building and handling any emergencies that tenants may have during the course of the evening." He testified "guards" would leave the lobby

desk when "doing a round." Although GuardPro's president testified guards were to remain at the lobby desk, in a memorandum issued about eleven months before plaintiff's assault, he "remind[ed]" the "[g]uards" stationed at Ocean Terrace "you are to be at the front desk unless you are on a patrol." He also testified GuardPro was hired to maintain security.

About three months before the assault, plaintiff was hired by GuardPro. In her complaint, plaintiff described GuardPro as a "security company" that "employed" her. The Ocean Terrace condominium complex was the only site where GuardPro had stationed her. Counsel for the condominium association asked plaintiff during her deposition to describe her "duties and responsibilities as a security guard at Ocean Terrace." With no objection to the form of the question by her counsel, plaintiff responded:

> What I understood [my] job obligations to be is [I was] responsible for checking in any persons that came to the front building to see somebody, they had to sign into a book, . . . and let you know where they were going. [I was] to make rounds, . . . like every hour of the parking garage, the pool area. . . . make sure all doors were secured, the outside of the facility. . . . [J]ust your standard security patrol policy and procedures.

According to plaintiff, she was told about doing rounds in the parking garage and the pool by the dayshift supervisor, GuardPro's president, and Carol McGuire, who worked in the condominium defendants' management and was

4

plaintiff's "report-to person." When asked about "doing rounds in the parking garage and the pool," plaintiff testified:

> that's part of doing security. . . . [W]e [are] there to, . . . serve and protect. . . . [I]t's our responsibility to make sure all those tenants are safe so, . . . you have to make your rounds. . . . At that time it was summertime so the pool was open. Security is responsible for making rounds. Just viewing the pool, making sure that they are secured at the end of the night, checking the parking garage.
>
> . . . [P]rior to me getting hired there they advised me they were having a lot of problems with bikes getting stolen, people, . . . breaking into the garage and . . . different things. . . . [B]e on the lookout of following up with maintenance, making sure maintenance puts the ladders that they used during the day away at night because, . . . people were breaking into the garage stealing cars and assaulting people. They had a lot of places to hide. So if you made the observation of a ladder you would document it. So when I made my rounds if I made any observations I would document it, report it to [the dayshift supervisor]. And I would also report it to Carol, Ms. McGuire.

Before she was stationed at Ocean Terrace, plaintiff was advised the cameras did not work and that inside the garage, tenants had had their bicycles stolen, their cars stolen, and had been assaulted "by kids or young men getting into the garage." Counsel for the condominium association asked plaintiff during her deposition if she "under[stood] it was [her] role as a security officer

5

to try and prevent these problems from occurring." With no objection to the form of the question from her counsel, plaintiff responded: "I was advised from Ocean Terrace management and GuardPro that, Deborah, you have to try to make sure you stay vigilant, make your presence be known. It's our responsibility as security to protect the tenants of Ocean Terrace." She understood that during her shift she was "to check the floors, . . . the parking garage, . . . the pool area, the exits." She testified "[t]hey wanted us to patrol the parking garage, check . . . the stair levels, check the exit doors" and it was part of her "every day" and "normal routine" to patrol those areas.

On the evening of the assault, plaintiff was at work at Ocean Terrace when she went to check the garage as part of her "normal rounds." She was "startled" by two men. One man had cut the lock to the bicycle "storage area" in the garage. The other "had something in his hand like he was going to attempt to break . . . a window." One of the men ran by plaintiff and "punched [her] in [the] face." The other "dropped the chains to the bike and . . . ran."

Plaintiff filed a complaint and an amended complaint, alleging the property had "a dangerous and hazardous condition," specifically "inadequate security devices, measures, and protocols." Plaintiff faulted the condominium defendants for doing "nothing to increase security devices, measures, or

6

protocols" and for failing "to adequately staff security guards," even though they were aware of the "break-ins" and that cameras were not working properly.

The condominium defendants' third-party complaint against GuardPro was dismissed with prejudice pursuant to a summary-judgment ruling. Plaintiff's counsel conceded during oral argument on appeal that plaintiff had applied for and received workers-compensation benefits based on the injuries she had sustained in the assault. See Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 174 (1985) (noting employees' entitlement to workers-compensation benefits for injuries suffered "by accident arising out of and in the course of employment").

Plaintiff served a report from Russell Kolins of the Kolins Security Group, which Kolins described as "National Security Experts [and] Consultants." According to Kolins, plaintiff worked as "a guard" at the condominiums and her duties were "to control access to the lobby, signing guests in and out, and making hourly patrols of the facility." Kolins described the assault as happening during her "shift as a guard" at the condominiums and after she had "left the lobby to start her patrol in the garage."

The condominium defendants moved for summary judgment. Judge Savio granted that motion, giving his reasons on the record following oral argument.

7

He found "based upon the plaintiff's testimony, . . . the plaintiff believed that what she was doing at the time that she was injured was within the scope of her employment . . . at GuardPro to provide security services for the Ocean Terrace." In making that finding, the judge specifically referenced plaintiff's testimony that "she was providing security services" and "thought it was within the scope of her employment to be doing what she was doing at the time that she was injured." He also found the condominium defendants had retained GuardPro to provide security services, "although certain testimony . . . from the defendants" could "be read . . . as suggesting that plaintiff's duties did not include patrolling the area where the bicycles were located." Judge Savio concluded there was "no genuine factual dispute about whether or not [plaintiff] was performing services within the scope of the contract between GuardPro and Ocean Terrace."[2] He granted summary judgment, finding "there [wa]s no duty on the part of a landowner to . . . an employee of an independent contractor who [wa]s performing services within the scope of h[er] contract."

On appeal, plaintiff argues the judge erred in granting the condominium defendants summary judgment because material facts concerning whether she was a security guard precluded summary judgment and because the

---

[2] The parties did not provide us with a copy of the contract.

condominium defendants could have been held liable for her injuries given that she was not a security guard.

## II.

We review a grant of summary judgment "de novo and apply the same standard as the trial court." Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021). "That standard mandates that summary judgment be granted 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). When determining if a genuine issue of material fact exists, the judge must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

A-0833-20

law."  Brill, 142 N.J. at 533 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)); see also Petro-Lubricant Testing Lab'ys, Inc. v. Adelman, 233 N.J 236, 257 (2018).  In our review, we owe "no special deference" to the trial court's legal analysis.  RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018).  Whether a defendant owes a plaintiff a duty and the scope of that duty are legal questions.  Shields v. Ramslee Motors, 240 N.J. 479, 487-88 (2020).

A landowner generally has "a nondelegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers."  Rigatti v. Reddy, 318 N.J. Super. 537, 541 (App. Div. 1999) (quoting Kane v. Hartz Mountain Indus., Inc., 278 N.J. Super. 129, 140 (App. Div. 1994)).  Although that duty extends to an independent contractor's employee, "[t]he landowner is under no duty to protect an employee of an independent contractor from the very hazard created by doing the contract work."  Sanna v. Nat'l Sponge Co., 209 N.J. Super. 60, 67 (App. Div. 1986); see also Olivo v. Owens-Illinois, Inc., 186 N.J. 394, 406-07 (2006) (recognizing "exception to the requirement that premises be made safe for an independent contractor when the contractor is invited onto the land to perform a specific task in respect of the hazard itself").  The reason for that exception to the landowner's general duty to protect invitees is that "the

landowner may assume that the independent contractor and [its] employees are sufficiently skilled to recognize the dangers associated with their task and adjust their methods accordingly to ensure their own safety." Accardi v. Enviro-Pak Sys. Co., 317 N.J. Super. 457, 463 (App. Div. 1999).

Thus, we have held a landowner is not liable when an independent contractor's employee sustains an injury "as a result of the very work which the employee was hired to perform." Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 318 (App. Div. 1996). See Rigatti, 318 N.J. Super. at 543 (finding landowner not liable to roofer's employee who was injured when he fell through the roof because "[t]he potential that a roofer may fall through any part of an old roof is an inherent risk reasonably foreseeable to the worker"); Cassano v. Aschoff, 226 N.J. Super. 110, 115 (App. Div. 1988) (landowner not liable when employee of tree-removal contractor was struck by falling limb); but see Nielsen v. Wal-Mart Store #2171, 429 N.J. Super. 251, 265 (App. Div. 2013) (holding exception does not "cover a circumstance . . . where the land occupier fails to warn of a hazardous condition that the independent contractor is not there to repair"); Moore v. Schering Plough, Inc., 328 N.J. Super. 300, 306 (App. Div. 2000) (holding exception does not apply to security guard who was injured when he slipped and fell on ice and snow he was not responsible for removing).

11

Here, plaintiff does not contest the application of the exception to the circumstances of this case if she were acting as a security guard. Instead, she now contends a factual dispute exists as to whether she was acting as a security guard. She makes that contention even though in her sworn testimony she consistently and repeatedly identified herself as a security guard and described her duties as those of a security guard; in her complaint she asserts she was employed by a "security company"; and her security expert witness found she had been working as "a guard," had a duty to make "hourly patrols of the facility," and had been injured during her "shift as a guard" when she was on "patrol in the garage." She bases that contention on isolated statements taken out of context. For example, she relies on the condominium defendants' vice president's reference to GuardPro[3] "[p]roviding concierge service for the lobby." But in the same sentence he testified about GuardPro personnel "periodically . . . checking exit doors leading from the building and handling any emergencies that tenants may have . . . ." He also testified "guards" would leave the lobby desk when "doing a round." She focuses on GuardPro's president's testimony about GuardPro's administrative responsibilities but ignores his testimony that

---

[3] We assume the reference is to GuardPro. The question asked was "And what service was that?" Plaintiff did not include a copy of the prior page of the transcript, making it difficult to discern the context of the question.

GuardPro was hired to maintain security and his memorandum reminding "guards" stationed at the condominiums to remain at the front desk unless they were "on a patrol."

The evidence establishes plaintiff was working as a security guard and was acting in that role in the scope of her employment when she was assaulted. Her own testimony compellingly confirms it. She clearly understood she was working as a security guard and that part of her job was to patrol the garage, which she knew had been the site of previous thefts and assaults. The findings of her security expert witness support that conclusion. The isolated comments on which plaintiff now relies do not "present[] a sufficient disagreement to require submission to a jury." Brill, 142 N.J. at 533 (quoting Anderson, 477 U.S. at 251-52). Here, the evidence "is so one-sided," ibid. (quoting Anderson, 477 U.S. at 252), that summary judgment was appropriate. With no genuine issue of material fact concerning her employment as a security guard and that she was acting in that capacity when she was assaulted, Judge Savio correctly applied the independent-contractor exception to the general landowner duty because plaintiff was engaged in "the very work which [she] was hired to perform." Dawson, 289 N.J. Super. at 318.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0833-20