**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0133-23

DONNA MCGRATH,

    Plaintiff-Appellant,

v.

PETER VEZZOSI, and
CONCEPCION VEZZOSI,

    Defendants-Respondents.

_____

Argued June 4, 2024 – Decided June 15, 2024

Before Judges Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-8755-20.

Timothy J. Foley argued the cause for appellant (Andrew S. Maze, PC, attorneys; Andrew S. Maze, of counsel and on the briefs; Timothy J. Foley, on the briefs).

Glenn T. Dyer argued the cause for respondents (Dyer & Peterson, P.C., attorneys; Nathan C. Orr, on the brief).

PER CURIAM

In this premises liability matter, plaintiff Donna McGrath appeals from the July 7, 2023 order granting summary judgment to defendants Peter and Concepcion Vezzosi. Plaintiff also challenges the August 11, 2023 order denying her motion to reconsider the July 7 order. We affirm both orders.

I.

On December 28, 2018, plaintiff went to defendants' two-family home in Carteret (Property) to visit her friend, Antoinette Vitelle. Vitelle rented defendants' second-floor apartment on the Property, and plaintiff had visited her there on prior occasions.

As plaintiff exited Vitelle's apartment later that evening, a motion sensor light turned on, and plaintiff noticed it was snowing. While holding onto the railing of the apartment's exterior rear stairway, plaintiff descended the stairs. She fell on the last step before the landing, injuring her ankle.

In December 2020, plaintiff sued defendants for negligence. She alleged they carelessly allowed hazardous conditions to exist on the Property's exterior stairway, and the conditions caused her to fall and injure herself. After defendants timely answered the complaint, the parties engaged in discovery.

During plaintiff's deposition, she testified that two months prior to her December 2018 fall at the Property, she fell on the same set of stairs, injuring

A-0133-23

her wrist. She recalled that when she descended the rear exterior stairs from Vitelle's apartment in October 2018, "[a]ll of the steps were normally spaced between them, and then the last one was significantly shorter than the other ones," causing her to fall on a "[l]anding at the bottom of the stairs."

Regarding the December 2018 incident, plaintiff testified she held onto the railing and descended the exterior stairway from Vitelle's apartment but because of her previous fall, she "was actually extra mindful of stepping" and "was very slow and careful to walk down the stairs." Moreover, she stated "[t]he problem was that there . . . was about a quarter of an inch of sleet and ice on the platform on the landing" because it was snowing. Plaintiff testified the motion detector on the stairway activated the light on the stairs so she "could see the snow and everything." Additionally, she stated she "mindfully stepped down and carefully stepped down onto the platform. However, [her] right leg slipped out from under [her] and inverted inward and [she] broke [her] ankle."

Vitelle also was deposed during discovery. She testified she lived at the same apartment on the Property for approximately twenty years. She had not fallen on the exterior stairs from her apartment but "almost" tripped on them "early on" in her tenancy. Vitelle stated she was aware certain maintenance was performed on the deck and stairs some seven years prior to her deposition.

3

Vitelle further testified that approximately four years before she was deposed, she notified Peter[1] there was a "spongy" step on the staircase. She did not check to see if he repaired it thereafter because Peter was "good with repairing." When asked if plaintiff ever told Vitelle "how the accident occurred," Vitelle answered, "[j]ust very basic, about tripping on the stairs, and it was slippery[] because I think it had started to snow."

In February 2023, Charles J. Witczak III, P.E. issued an expert report on plaintiff's behalf. Witczak opined that on December 28, 2018, "defendant[s] should have anticipated the possibility of the occurrence of snowfall and taken the appropriate measures to insure the safe surface conditions of [the Property's exterior stairway]." Witczak also stated, "defendant[s] failed to protect the safety of pedestrians utilizing the walkway in question by allowing the hazardous condition created by icy surfaces present along . . . plaintiff's path of travel, which was the cause of h[er] accident."

Additionally, Witczak opined the stair railings, tread depths and tread slopes on the Property's exterior stairs violated the 2015 International Residential Code (IRC), a code that sets standards for exterior stairs. Witczak

---

[1] Because defendants share the same surname, we use their first names. We intend no disrespect in doing so.

specifically found "[t]he riser height difference between the lower step and the wooden deck where the accident took place . . . significantly exceed[ed] the allowable standard and was a violation [of] the [IRC]."  Further, according to Witczak, "[h]andrails were found on both sides of the stairway until it reached the second tread above the landing in question.  At that point[,] the right[ ]side railing . . . was interrupted by a . . . support column while the railing on the left side terminated completely."  Witczak concluded the "numerous hazardous defects contained within the stairway[,] which w[ere] made even more dangerous by the slippery surface conditions of the walkway area at the location of . . . plaintiff's fall[,] were the cause of [plaintiff's] accident."

Witczak issued a supplemental report in May 2023.  He reiterated the 2015 IRC "applie[d] to the accident[] suffered by . . . plaintiff," noting this code "was in effect at the time of . . . plaintiff's accident," but in any event, "[s]tairway requirements relative to stair treads and risers contained in CABO[2] 1991 [we]re the same as in the 2015 IRC."  He did not state the CABO 1991 was the same as the 2015 IRC relative to requirements for handrails.

---

2  "CABO" is the acronym for Council of American Building Officials.

A-0133-23

After opining "it [wa]s appropriate to evaluate an accident site relative to the codes that [we]re in place at the time of the particular accident to determine if the location [wa]s safe or not," Witczak concluded defendants' "decision to disregard applicable building standards resulted in the hazardous condition that caused the accident suffered by . . . plaintiff." He further stated:

> plaintiff traveled down a set of stairs that did not meet code relative to slopes or riser heights[,] which . . . would result in a pedestrian losing their balance as they traveled down same. This condition was then compounded by the fact that the handrail did not allow for adequate grasping capabilities[,] which would be the mechanism that a pedestrian would use to regain their balance once experiencing the initial loss of balance associated with the nonconforming stairway features. These hazardous conditions then culminated with . . . plaintiff stepping onto a non-maintained slippery surface that ultimately resulted in her fall.
>
> . . . .
>
> Based on these findings, it remains my opinion within a reasonable degree of engineering certainty that the numerous hazardous defects contained within the stairway[,] which was made even more dangerous by the slippery surface conditions of the walkway area at the location of . . . plaintiff's fall[,] were the cause of the accident suffered by [plaintiff] on December 28, 2018.

In June 2023, defendants moved for summary judgment. They contended Witczak's reports were inconsistent with plaintiff's deposition testimony as to

6

the cause of her fall. Defendants also argued Witczak utilized the wrong code to assess the exterior stairway from Vitelle's apartment because the Property was renovated well before 2015. In fact, they contended that in or around 1991, with the assistance of a county Rental Rehabilitation Program, a new rear deck and exterior staircase was constructed on the Property.

Following his review of Witczak's reports and after hearing argument on July 7, 2023, the judge orally granted defendants' motion. Initially, the judge found that based on the "ongoing storm rule" announced by our Supreme Court in Pareja v. Princeton International Properties, 246 N.J. 546 (2021), plaintiff failed to establish defendants owed her a duty of care to ensure their exterior rear stairs were free of snow and ice when she fell on December 28, 2018. Therefore, the judge concluded, "the part of . . . Witczak's report that trie[d] to create some duty of defendants based on snow and ice, that's out."

Turning to Witczak's conclusion that alleged defects in the Property's exterior stairway led to plaintiff's fall, the judge found Witczak applied "the wrong code" in his analysis. The judge reasoned the Property's exterior stairway "was built in 1990/1991," whereas Witczak "appl[ied] the code adopted in 2015." The judge also found that even if there was a major renovation to the Property's exterior rear stairway in 2014, as reflected in Vitelle's deposition

7

testimony, "the old code" applied, rather than the code subsequently adopted in 2015. He explained, "[t]here is zero statutory or case law authority that imposes a duty on property owners to constantly renovate their properties every time there[ is] a new building code," and new building codes have "always been applie[d] prospectively."

Next, the judge rejected Witczak's conclusions from the May 2023 report, noting the expert determined:

> the typical person going down the stairs is[ not] concentrating step after step. They develop a rhythm based on a consistent size for each step. And somebody going down a flight of stairs and the last step is a little short, they could trip because of that, and they could fall because of that, . . . because their foot would hit the ground quicker than they expected, but that's not what happened here. (Emphasis added).

The judge further observed:

> plaintiff testified . . . she was aware that th[e] bottom step was a short step. In her testimony, she said, ["]I was very careful. When I got to the bottom landing, the bottom step, I was actually extra mindful of stepping . . . and so I was walking slowly and I stepped down slowly.["]

Additionally, the judge noted plaintiff testified at her deposition:

> the problem was that . . . it was snowing and there was a quarter of an inch of sleet and ice on the platform and the landing, and[] as I was coming down, . . . the motion detector light turned on. I could see the snow and

everything, and I mindfully stepped down and carefully stepped on the platform[. H]owever, my right leg slipped out from under me and inverted inward and broke my ankle.

Thus, the judge concluded plaintiff "did[ not] slip because of the design of the staircase. She slipped because of the snow, and pursuant to Pareja[,] . . . the landlord[s] had no duty at that time to remove the snow under the continuing storm rule." The judge entered a conforming order that day, granting defendants summary judgment.

Plaintiff moved for reconsideration of the July 7 order. The judge denied the motion on August 11, 2023. In a written opinion accompanying the August 11 order, the judge stated:

> [P]laintiff's expert alleged negligence of . . . defendant[s] for two reasons[: (]1) the design of the staircase was faulty and should have been corrected by . . . defendant landlord[s;] and [(]2) there was a duty on the part of . . . defendant[s] to keep the stairs clear of snow. Since . . . plaintiff testified it was snowing at the time of the fall, . . . [defendants] had no duty to clear the stairs of snow[,] pursuant to the continuing storm rule as set forth . . . in Pareja[,] . . . and the vague language of the Carteret Property Maintenance Code was insufficient to impose such a duty on [defendants].
>
> As to the design of the staircase, . . . plaintiff's expert claimed . . . the last step would likely cause a fall because persons descending a flight of stairs develop a rhythm that is interrupted by a change in the height of a stair and would cause a loss in balance. However, this

9

theory of causation is flatly contradicted by . . . plaintiff's deposition testimony that she "was aware" of the short step, so she "was very slow and careful to walk down the stairs." . . . [P]laintiff also testified that "[t]he problem was that . . . it was snowing, and there was about a quarter of an inch of sleet and ice on the platform on the landing." Thus, based [on] this testimony of . . . plaintiff, which her expert ignores in his reports, . . . her fall had nothing to do with the design of the stairs, which renders that portion of the opinion to be a net opinion. Because . . . plaintiff clearly testifie[d] the fall was caused by snow and ice on the landing (which was "the problem[,]" in her words), liability is barred by the continuing storm rule.

Since there is no liability under any theory of causation set for[t]h by . . . [plaintiff]'s expert, there is no basis for an analysis as to comparative negligence.

II.

On appeal, plaintiff argues: (1) the July 7 and August 11, 2023 orders "must be reversed because [plaintiff] produced sufficient evidence to present the issue of proximate causation to a jury"; (2) "Pareja . . . does not bar plaintiff's claim" because "Pareja is unconstitutional and should be vacated"; (3) alternatively, "Pareja should be limited" in its application, but if Pareja stands and applies here, her "case falls within [Pareja's] exception for pre-existing conditions"; (4) "the denial of reconsideration should be reversed because taking proximate cause from the jury was palpably incorrect"; and (5) "defendants'

10

argument that plaintiff's expert relied on the wrong building code is immaterial." These arguments fail.

We review orders granting summary judgment de novo and apply the same standard as the trial court. Lee v. Brown, 232 N.J. 114, 126-27 (2018). However, we review with deference a trial court's denial of a motion for reconsideration under Rule 4:49-2, and do not disturb the denial absent an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). A dissatisfied litigant's desire to reargue an unsuccessful motion does not warrant reconsideration. Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010).

"[S]ummary judgment will be granted if there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Conley v. Guerrero, 228 N.J. 339, 346 (2017) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). To determine whether there are genuine issues of material fact, we "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

A plaintiff in a negligence action, including a negligence action against a homeowner, "must establish four elements: '(1) a duty of care[;] (2) a breach of that duty[;] (3) proximate cause[;] and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). "A 'plaintiff bears the burden of establishing those elements by some competent proof.'" Ibid. (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)).

With respect to commercial landowners, their duty to maintain safe premises extends to any area in which invitees are expected to go and requires them to protect an invitee from "known or reasonably discoverable dangers." Moore v. Schering Plough, Inc., 328 N.J. Super. 300, 305 (App. Div. 2000) (quoting Rigatti v. Reddy, 318 N.J. Super. 537, 541 (App. Div. 1999)). However, pertinent to this appeal, our Supreme Court recently adopted the

ongoing storm rule, holding "commercial landowners do not have a duty to remove the accumulation of snow and ice until the conclusion of the storm." Pareja, 246 N.J. at 558.[3] The Court identified two categorical exceptions to the ongoing storm rule: (1) if the commercial landowner exacerbates the risk of harm; or (2) when there was a pre-existing risk of harm on the premises prior to the storm. Id. at 559.

In any negligence action, "[t]he admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend, 221 N.J. at 52. Thus, "we apply . . . [a] deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011).

"When a trial court determines the admissibility of expert testimony, N.J.R.E. 702 and N.J.R.E. 703 frame its analysis." Townsend, 221 N.J. at 53. The former rule establishes when expert testimony is permissible and requires

---

[3] In Pareja, the plaintiff slipped, fell, and injured himself on a driveway apron, which was private property owned by the defendant, Princeton International. Id. at 548. In the early morning hours prior to the incident, freezing rain, light rain, and sleet had fallen. Id. at 549. At the time of plaintiff's injury, precipitation was ongoing. Ibid.

the expert be qualified in their respective field. The latter rule requires "expert opinion be grounded in 'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence[,] but which is the type of data normally relied upon by experts.'" Ibid. (quoting Polzo, 196 N.J. at 583).

"The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (alteration and omission in original) (quoting Polzo, 196 N.J. at 583). Therefore, an expert is required to "give the why and wherefore that supports the opinion, rather than a mere conclusion." Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)). Pursuant to the net opinion rule, an expert must "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).

"The net opinion rule is succinctly defined as 'a prohibition against speculative testimony.'" Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013) (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)). This results because a speculating expert "ceases to be an aid to the trier of fact

and becomes nothing more than an additional juror," Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996), affording no benefit to the fact finder, see N.J.R.E. 702.

Governed by these standards, we have no reason to disturb either challenged order, and affirm, substantially for the reasons stated by the judge in his oral and written opinions. Moreover, we are persuaded plaintiff's argument that Pareja is unconstitutional lacks merit. R. 2:11-3(e)(1)(E). The same is true of her argument that Pareja is inapplicable to her case. In fact, there is no indication anywhere in the Pareja opinion the Court intended to apply the ongoing storm rule only to public property, nor does logic or caselaw support such a conclusion.

Additionally, we are satisfied plaintiff failed to establish either of the Pareja exceptions applied to her case. Specifically, plaintiff presented no evidence showing defendants exacerbated the risk of harm by removing snow or ice just prior to her December 2018 fall. We also concur with the judge's determination that plaintiff failed to show a pre-existing risk of harm on the Property proximately caused her injuries, considering her expert's opinion as to the cause of the December 2018 fall was not tethered to the facts elicited during discovery, including plaintiff's deposition testimony. Thus, the judge correctly

found <u>Pareja</u>'s ongoing storm rule relieved defendants of any duty of care they may have owed plaintiff, and defendants were entitled to summary judgment as a matter of law.

To the extent we have not addressed any of plaintiff's remaining arguments, they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0133-23